[Civ. No. 10654.   First Appellate District, Division Two.—September 16, 1938.]

A. D. DODSON, Plaintiff and Appellant, v. PHILIP GREUNER, as Special Administrator, etc., Defendant and Appellant; A. D. DODSON, Respondent, v. C. L. JENNINGS et al., Appellants; A. D. DODSON, Respondent, v. A. S. HARVEY et al., Appellants; A. D. DODSON, Respondent, v. JANE THORPE et al., Appellants; A. D. DODSON, Respondent, v. WALTER W. PARKER et al., Appellants; A. D. DODSON, Respondent, v. A. B. MANNING et al., Appellants; A. D. DODSON, Respondent, v. F. A. J. HOWELL et al., Appellants.

McKee, Tasheira & Wahrhaftig and George A. Work for Plaintiff and Appellant.

Alfred Nelson for Defendants and Appellants.

STURTEVANT, J.—The record before us presents seven appeals in seven actions arising out of loans made by the Bank of America to W. M. Greuner, since deceased. The bank assigned its claims to this plaintiff and as such assignee he maintained the litigation. The plaintiff appealed in one case and the defendant, Philip Gruener, as special administrator of the estate of W. M. Greuner, deceased, appealed in each of them.

### Plaintiff's Appeal.

The plaintiff's appeal was taken in the action entitled *A. D. Dodson, Plaintiff,* v. *Philip Greuner, as Special Administrator of the Estate of W. M. Greuner, Deceased, Defendant.* Prior to November 1, 1930, W. M. Greuner borrowed from Bank of Italy National Trust and Savings Association, three several sums of money and executed and delivered to said association his promissory notes promising to repay said sums with interest as therein stated. Said association, on November 1, 1930, consolidated with Bank of America National Trust and Savings Association. On December 1, 1930, W. M. Greuner borrowed from the Bank of America a further sum and executed and delivered his promissory note promising to repay such sum with interest. On February 8, 1934, W. M. Greuner died. No general letters testamentary or general letters of administration have ever been issued on his estate. On February 23, 1934, Philip Greuner was appointed special administrator of the estate of W. M. Greuner, deceased. On March 13, 1934, an order was duly made granting said special administrator powers of a general administrator of the estate of W. M. Greuner, deceased. On March 31, 1934, a notice to creditors of the deceased was published. On September 28, 1934, plaintiff caused to be presented, pursuant to said notice to creditors, his claim based on said promissory notes. The four several notes matured respectively on August 29, 1930, August 2, 1930, March 1, 1931, and August 29, 1930. On February 8, 1934, the date of the death of W. M. Greuner, the de-

cedent was in default in his payments on each and all of the said notes. No action was taken on said claim and on June 29, 1935, the plaintiff commenced this action. That is he commenced his action sixteen months after special letters of administration issued and fifteen months after the order granting general powers issued. The defendant filed an answer setting forth many denials and pleaded as an affirmative defense that the action was barred by section 353 of the Code of Civil Procedure. The trial court made findings of fact in favor of the defendant and from the judgment entered thereon the plaintiff has appealed.

The plaintiff makes only one point and that is that his action was not barred by the provisions of section 353 of the Code of Civil Procedure and therefore judgment on the findings of fact should have been in his favor. The real controversy between the parties brings up the proper construction of said statute. Said section is as follows: "Section 353. . . . If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representatives, after the expiration of that time, and within one year after the issuing of letters testamentary or of administration." The plaintiff contends that said language should be construed as though the word "general" were inserted before the word "letters". He argues that such was the meaning when the section was enacted and such must be its meaning now. The vice in that argument is that the plaintiff overlooks the plain meaning of certain sections of the Probate Code which must be read in connection with section 353 of the Code of Civil Procedure. ■ Ordinarily a special administrator has no powers except to collect, conserve, and protect the estate of his decedent. (Probate Code, secs. 460, 463.) His obligations are to the estate solely. But where, as here, an order is made conferring on the special administrator general powers, it has the effect of conferring and imposing on him " . . . the powers, duties, and *obligations* of a general administrator". (Probate Code, sec. 465.) Thereafter he has obligations to perform to others than merely to the estate; that is, among other things, he must proceed, in due time and as provided by law, to receive, and act on claims presented against the estate. ■ The lan-

guage of section 353 of the Code of Civil Procedure is in no manner changed but by virtue of sections 463 and 465 of the Probate Code said section 353 is made applicable to him and he may not waive its provisions. (11 Cal. Jur., sec. 461, p. 776.)

When on March 13, 1934, the order was made "providing that such special administrator shall thereafter have the additional powers, duties and obligations of a general administrator . . ." (Probate Code, sec. 465), such order had the effect, so far as the rights of this plaintiff are concerned, of making and constituting defendant's letters of administration general and the plaintiff was bound to act accordingly. The trial court did not err in holding that when this action was commenced June 29, 1935, the action was barred by section 353 of the Code of Civil Procedure.

### Defendant's Appeal.

The defendant earnestly contends that in maintaining these actions the plaintiff is violating the collection agency law of this state. (Deering's 1933 Supp. to Deering's Codes and General Laws, p. 1271.) Section 2 consists of four paragraphs. The defendant quotes from and relies on the general language contained in the first paragraph. The plaintiff quotes from and relies on provisions contained in the second paragraph. He quotes and italicizes as follows: "The term 'collection agency' shall not include attorneys at law, individuals regularly employed on a regular wage or salary, *in the capacity of credit men or in other similar capacity upon the staff of employees of any one person, one firm, one corporation or one voluntary association* not engaged in the business of a collection agency, *banks,* abstract companies doing an escrow business, duly licensed real estate brokers or agents doing a real estate business, nor a merchant-owned nonprofit credit association unless they are conducting a collection agency." The trial court found all of the facts involved in the issues in favor of the plaintiff. Except as quoted below, the defendant did not produce the testimony of the plaintiff nor the testimony of any one of his superior officers nor any document showing or tending to show the authority of the plaintiff. (*Kast* v. *Miller & Lux,* 159 Cal. 723, 727 [115 Pac. 932].) The plaintiff testified that he was a credit man of the Bank of America acting as an assistant to an assistant vice-president of the bank. The defendant

elicited statements to the effect that, in transacting the business entrusted to him, the plaintiff did or did not do certain things. The very most that can be said in behalf of such testimony is that it raised a conflict in the evidence. However, we have not discovered even a conflict in the evidence. There was no claim that the plaintiff acted for any person whatever except the Bank of America. That he was not the only credit man and did not do all of the credit business of the Bank of America are facts which are not persuasive. It is not reasonable to assume the legislature intended all of the credit business of a large institution must be done by one man.

In one of the actions, the defendant asserts, the trial court gave judgment in favor of the plaintiff on a note which was never introduced in evidence. The vice in that contention is that it is not supported by the record. True, the record does not show that the trial court announced "admitted". But the record shows many facts to the effect that both parties and also the trial court proceeded and treated the note as being in evidence. The plaintiff offered the note. He proved the signatures thereon. He stated many of the elements contained in the note. The defendant's cross-examination elicited other elements contained in it. The clerk duly stamped it as an exhibit and as such it is before this court. We may not, under these facts, hold it was not admitted in evidence. (24 Cal. Jur. 759; 64 Cor. Jur. 116; *Wright* v. *Roseberry*, 81 Cal. 87 [22 Pac. 336]; *Consolidated Lumber Co.* v. *Frew*, 32 Cal. App. 118 [162 Pac. 430].)

The next point made by the defendant is that the trial court rendered double judgments for the same loan. We think it is clear it did not do so. There were seven actions brought to trial. One we have discussed above under the heading "Plaintiff's Appeal". That action was commenced *after* the death of W. M. Greuner. The other six actions were commenced *before* his death. It is not claimed that two separate judgments for the same amount were rendered for any single loan. Nor is it claimed that an allowance in any other specific sum was so doubled. But it is the contention of the defendant that as he construes the judgments there was, in effect, a doubling. The plaintiff in his brief states separately the amount due on each loan, the amount and nature of each judgment, and demonstrates there

was no doubling of awards made as to any one loan. In his reply brief the defendant does not point to any error in the computations so set forth by the plaintiff. Where, as here, there are so many different documents evidencing certain obligations arising out of and relating to several different loans, it would be possible for a doubling to occur. But the trials were conducted closely following the procedure delineated in *Anglo-California T. Co.* v. *Oakland Rys.*, 193 Cal. 451 [225 Pac. 452]. The amount due on each separate loan was ascertained and determined. The amount of the liability on each separate contract was also ascertained and determined. Then, following the case last cited, provisions were inserted in the judgments that the plaintiff might collect the amounts so found due up to, but not in excess of, the amount due on the several loans and that thereupon the several judgments would stand satisfied.

The defendant contends that the plaintiff could take no affirmative action to enforce his rights after the statute of limitations had run against the plaintiff in the action based on the primary debt. If he means by these contentions that after the statute of limitations had run in the first action the plaintiff had no right to take any step in the other actions, notwithstanding the fact that they were commenced before the statute of limitations had run, such contentions are too broad. (*Anglo-California Trust Co.* v. *Holbrook*, 218 Cal. 531 [24 Pac. (2d) 169]; *Griggs* v. *Day*, 136 N. Y. 152 [32 N. E. 612, 32 Am. St. Rep. 704, 716, 18 L. R. A. 120]; *Menzel* v. *Hinton*, 132 N. C. 660 [44 S. E. 385, 95 Am. St. Rep. 647]; *Hodge* v. *Truax*, 184 Wash. 360 [51 Pac. (2d) 357, 102 A. L. R. 420, 432]; *Russell* v. *People's Nat. Bank*, (Tex. Civ. App.) 2 S. W. (2d) 961, 963; 17 R. C. L. 948.)

All of the judgments appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1938, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 14, 1938.