[Civ. No. 12447. Second Appellate District, Division Two.—January 12, 1940.]

In the Matter of the Estate of CAROLINE W. DOBBINS, Deceased. HORACE M. DOBBINS, Appellant, v. TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Executor, etc., et al., Respondents.

F. Josephine Stevenson and Raymond G. Thompson for Appellant.

Alfred G. Allen for Respondents.

MOORE, P. J.—Caroline W. Dobbins departed this life January 6, 1935, leaving a numerous posterity and many legatees. By a last will, she provided that the residue of her estate go to the Title Guarantee and Trust Company and her son, Horace Dobbins, as joint trustees, and that the trustees were to pay the net income from said trust estate to the said Horace during his lifetime and at his death the *corpus* should go to the California Institute of Technology. The executors, who were also designated trustees, were qualified February 5, 1935.

On August 2d her granddaughter, Florence Lowe Barnes, filed a contest of said will and thereafter presented a claim against the estate for a sum in excess of $500,000. The said claim was rejected by the executors but, before a suit was filed thereon, the numerous legatees, the contestant and claimants, reached an agreement September 10, 1936, for the disposition of all matters in controversy and of the entire estate.

In effect the contract provided that the testamentary trust is terminated and that in lieu thereof certain assets shall be distributed to the said Horace aggregating about $150.000.

Nothing more appears to have been done with reference to distribution until December 6, 1938, when the executors filed their final account and report in which they allege that *Horace contends that he is entitled to all of the net income* (subject to assignments) *from the properties to be distributed to him under said agreement;* that the persons entitled to the residue contend that all income received from said properties up to the time of distribution should be distributed as part of such residue.

A trial of the controversy thus created was had before the superior court sitting in probate. The only evidence offered was: (1) said agreement; (2) a judgment in the case of *California Institute of Technology and Horace M. Dobbins* v. *Title Guarantee and Trust Company,* terminating the trust provided for in said last will and authorizing the trustees to execute the contract of September 10, 1936; and (3) an order made in said last-mentioned proceeding dated December 1, 1936, authorizing the compromise effected by said contract.

The trial court held that Horace and his successors in interest were not entitled to any interest or income collected on the assets to be distributed to them prior to distribution of the said estate, said collections amounting to the sum of $10.145.57, after deducting taxes and other expenses directly attributable thereto. After hearing, his motion for a new trial was denied.

Upon this appeal, the following questions are presented: (1) Did the probate court have jurisdiction to make an order for distribution of the income collected upon properties which were to be distributed to Horace M. Dobbins pursuant to the contract of compromise effected by the parties, in the course of probate? (2) Was Horace Dobbins entitled to the income from said properties so to be distributed to him?

I. No serious question is raised as to the correctness of the jurisdiction of the probate court to make the order in question. The code provides that any person claiming to be entitled to distribution of any part of the estate may petition the court to determine who are entitled to distribution (Prob. Code, sec. 1080); that the court shall hear the petition and any objection and determine who are en-

titled to distribution and specify their interests. (Prob. Code, sec. 1081.) ■ Since, by said section, the probate court is vested with power to determine who are entitled to the estate and since the executor must be discharged after he has "delivered up all property of the estate to the parties entitled" (Prob. Code, sec. 1066) appellant had no right to the possession of the assets which he agreed should be *distributed* to him prior to their distribution by the court and, of course, he was not entitled to the income from said assets during administration in the absence of any specific provision therefor in the agreement.

There could be no doubt of the correctness of the jurisdiction. Said section provides that the probate court shall determine "who are entitled to the estate". If the claim of appellant had been one asserted by a party adverse to the estate, it would have found its way to the civil docket for trial. (*Estate of King,* 199 Cal. 113 [248 Pac. 519].) ■ But this proceeding is such as is contemplated by said section 1066 of the Probate Code. (*In re Burton,* 93 Cal. 459 [29 Pac. 36]; *Estate of Dodge,* 9 Cal. (2d) 650 [50 Pac. (2d) 839].) Where the whole purpose of the proceeding is to determine the rights of the respective parties, heirs and legatees, contestants and contestees, to the property, the probate court had jurisdiction to determine the issues. (*Estate of Dodge, supra.*) The administration of an estate is one indivisible judicial proceeding from the order appointing the administrator till his discharge. (*Wood* v. *Roach,* 125 Cal. App. 631 [14 Pac. (2d) 170].) While sitting in probate, the superior court may determine the validity of a contract whereby it is claimed a spouse has been divested of all interest in the estate. (*Estate of Cover,* 188 Cal. 133 [204 Pac. 583]; *Estate of Warner,* 6 Cal. App. 361 [92 Pac. 191].) The fact that it is acting in probate when called upon to apply rules in equity or principles of law to decide a question requiring settlement, does not affect its jurisdiction to do so. As a probate court in determining issues arising in the administration of an estate, "it may bring to its aid the full equitable and legal powers with which as the superior court, it is invested". (*Estate of Bell,* 168 Cal. 253 [141 Pac. 1179].) When the superior court has jurisdiction of the subject-matter of a case, falling within either equity or law, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determina-

tion of which is ancillary to a proper judgment. It has the same power sitting in probate. In any case, it pursued the mode prescribed by statute, but derives its power from the Constitution. (*Burris* v. *Kennedy,* 108 Cal. 331, at 336 [41 Pac. 458].)

The authorities cited by appellant are not in point. In the *Estate of Polito,* 51 Cal. App. 752 [197 Pac. 976], the probate court declined to offset a claim of the estate against an inheritance of John Polito, a son, for the reason that a judgment lien existed upon his interest in favor of Sarah McCurdy which ''was entitled to be satisfied out of the interest of said John Polito''. In *Smith* v. *Westerfield,* 88 Cal. 374 [26 Pac. 206], the plaintiffs petitioned to have heirship determined within less than four months after the opening of the succession whereas the statute required the lapse of one year. In *Buckley* v. *Superior Court,* 102 Cal. 6 [36 Pac. 360, 41 Am. St. Rep. 135], the order of final distribution of the estate among the devisees had been entered on May 12, 1893. One month later, one of the distributees petitioned the probate court to partition the lands so distributed. The trial court made its order on August 30th, directing the partition and appointed commissioners to effect the order. To make such partition would not have been incidental to the probate of the estate but would have been the adjudication of differences among the distributees and was, therefore, prohibited. *Curtis* v. *Schell,* 129 Cal. 208 [61 Pac. 951, 79 Am. St. Rep. 107], was an action in equity to vacate an order authorizing the sale of the lands of the estate to pay a family allowance for the preceding 16 years. During that period the widow executrix had mortgaged her own share for the support of the family. Her children had grown to maturity and her mortgagees had invested in good faith. To sell all the lands would have, in effect, cancelled said mortgages and would, perforce, have perpetrated a fraud upon those who in confidence had loaned the widow their moneys. The judgment vacating said order was affirmed. In the *Estate of Howe,* 161 Cal. 152 [118 Pac. 515], the decision upheld the probate court in its refusal to determine the conflicting claims to the interest in certain real property of an heir and his judgment creditors, who had caused his interest to be levied upon and sold during the course of administration. So may the remaining cases cited be similarly distinguished. (*Es-*

tate of Strong, 119 Cal. 663 [51 Pac. 1078]; Estate of Davis, 136 Cal. 590 [69 Pac. 412]; Martinovich v. Marsicano, 137 Cal. 354 [70 Pac. 459]; Estate of Ryder, 141 Cal. 366 [74 Pac. 993]; McGee v. Allen, 7 Cal. (2d) 468 [60 Pac. (2d) 1026].)

II. The contract executed by the executors, legatees, heirs and claimants, under a fair interpretation, provided a method for distributing the estate and settled litigation involving vitriolic controversies. There is nothing in the contract that fairly implies a present conveyance of the assets agreed upon as the portion of appellant. It terminated the testamentary trust created for appellant's benefit and provided that listed assets "shall be distributed" to Horace. The assignments by other heirs and legatees of their interests in the assets "to be distributed to Horace" in no sense suggested that thereby title to such assets was vested in him. Always, when during administration an heir conveys his interest in any part of an estate in probate, such conveyance is subject to the perils of the proceeding. If, for any necessity, a sale of the assets of the estate should be ordered, it might alienate to an utter stranger the very property affected by such conveyance. The purpose of the contract, as preambled, was "in order that said estate be distributed", etc., and to "provide that each of the parties hereto shall receive from said estate . . . the moneys and properties hereinafter provided paid to him", and the clause that "all of the foregoing assets contracted to be distributed unto Horace Dobbins and . . . the other parties . . . authorize such assignment and such distribution: these passages leave no doubt of the intention of the parties to provide for a distribution, after probate should have run its course.

Finally, when the contracting parties arrive at the point of bringing appellant's consent to the surrender of specific advantages, he joins with the others in directing "that said executors shall deliver and distribute unto Horace Dobbins all of the foregoing assets . . . in complete satisfaction of all moneys payable to him and all rights accruing to him under and by virtue of said will and said Horace Dobbins does hereby agree to accept said assets in lieu of the provisions made for him in said will". Clearly the intention of the latter clause was that Horace accepted the assignment of assets to be delivered at distribution, in lieu of his

testamentary benefits to begin after distribution. This meant that the entirety of the estate should be kept intact during probate, thus yielding to the estate all income from *all the assets* of the estate including those to be distributed to appellant.

For the reasons indicated, the judgment is affirmed.

Wood, J., and McComb, J., concurred.