[Civ. No. 12962. Second Appellate District, Division Two.— March 26, 1941.]

In the Matter of the Estate of ADELAIDE BERMUDA DE BARRY, Deceased. JOHANNA COYNE, as Executrix, etc., Appellant, v. LUCILLE M. BARRY et al., Respondents.

Chapman & Chapman, Ward Chapman, John S. Frazer and Irsfeld & Irsfeld for Appellant.

Laurence B. Martin and William S. Scully for Respondents.

MOORE, P. J.—This appeal is taken by Johanna Coyne, the executrix of the estate of Attorney D. Joseph Coyne, from an order of the superior court sitting in probate, whereby it fixed the fees for the extraordinary services rendered by Mr. Coyne as attorney for the estate of Adelaide De Barry in the sum of $2,500. As a part of the same order, the attorney was required to restore to the estate the sum of $15,000 which he had received as attorney for the executrix and withheld as fees for extraordinary services. The order provided that if the attorney should fail within thirty days to restore the $15,000 to the estate that then and in that event the estate should recover from him the full sum of $17,500 "unlawfully deducted and withheld from the funds of the estate and converted to his own uses."

While the caption indicates that respondent is the executrix who was in office at and prior to the time the attorney acquired and retained the moneys, the fact is that following the entry of the order in question, by agreement with her co-heirs, the executrix resigned and Marcus L. Roberts qualified as administrator with will annexed of the estate of decedent and he is now so acting.

The questions involved are: (1) whether the superior court sitting in probate and hereinafter referred to as the probate court, upon hearing an account of the executrix and the objections thereto, may fix the fees for the extraordinary services of an attorney and at the same time require the attorney to restore to the estate moneys theretofore acquired by him without an order of the court; (2) whether the revocation of the probate of decedent's will, following a contest after probate by her infant heirs, nullifies, as to those heirs, all of the agreements of the executrix and her attorney as well as orders of the court made at the request of such attorney for his own advantage; (3) whether upon the hearing of such account and objections thereto the court may make findings with reference to matters not mentioned in the objections of the attorney but which are integrally related to the value of such extraordinary services.

It is established that at some time prior to July, 1932, the will of the decedent, Adelaide B. De Barry was admitted to probate by the Superior Court of Los Angeles County; that the will named Lucille M. Barry as its executrix; that the executrix employed one D. Joseph Coyne as attorney to present the will for probate and to perform the statutory services required of an attorney of an estate. Some seventeen years prior to the passing of Mrs. De Barry, she had executed an oil and gas lease upon certain of her lands to one Taylor. This lease was to continue for a period of twenty years from date and provided that the lessee might retain possession and continue to operate any well or wells producing oil so long after the termination of the lease as such oil or kindred substances were produced in paying quantities. By mesne assignments, the lease ultimately passed into the ownership of the Texas Company, which was the owner of the lease until its expiration.

On July 6, 1932, about five years prior to the expiration of the lease, and while Coyne was attorney for the estate, he

caused Lucille Barry to sign a letter as executrix and individually which purported to employ him to recover royalties unpaid and damages arising out of the failure of the Texas Company to drill and produce oil and gas on the lands of the estate under the Taylor lease and to make such adjustments and settlement as might thereafter be approved by her. Also, by the same instrument, he was to file suit in order to determine the rights and obligations of both parties under the lease with reference to the future drilling on the property in deeper zones. As a consideration for his services and for advancing costs to prosecute the actions mentioned, the writing provided that Coyne was to be paid fifty per cent of the moneys received by "settlement or adjustment made". Subsequently Coyne filed two suits against the Texas Company to recover damages for drainage of oil from the land and for declaratory relief. Both actions were brought in the name of Lucille Barry individually and as executrix.

On October 25, 1933, Coyne petitioned the court for approval of a new lease on the same property to one Slaney, brother-in-law of Coyne, to take effect upon the expiration of the Taylor lease in April, 1937. Under this new document, the lessee was to pay the sum of $500 as a consideration for this lease and 1/7th of the gross proceeds received by the lessee or his assigns "from the sale of oil and gas produced, saved and sold from the leased premises". The order authorizing the lease to Slaney was prepared and presented by Attorney Coyne at the hearing on November 7, 1933. Prior to that order, however, Coyne had for a long time known that the Texas Company desired an extension of its lease beyond the date of its termination.

Thereafter Attorney Joseph Scott on behalf of two of the legatees, on the grounds of the inadvertence and excusable neglect of his clients and of the illegality of the order, and of the fraud of Miss Barry, moved the court to (1) vacate the order confirming the Slaney lease, (2) to vacate the order distributing the Taylor lease to Lucille Barry, and (3) to remove her as executrix. Scott's opposition and motion to vacate the order confirming the Slaney lease came on for hearing before the probate department on February 6, 1934. On that day the Texas Company offered to renew its lease and stated that it was ready to pay 1/6th royalty and $30,000

in cash in consideration for the lease and in settlement of the litigation which Coyne had instituted. The court suggested the inadequacy of the offer. Further hearing on the motion and opposition was continued until the 13th day of February.

In the *interim* Attorney Scott procured an offer from the Texas Company for the payment of $60,000 for the Slaney lease and in settlement of all controversial matters, including the drainage suits.

On the 10th day of February, 1934, Lucille Barry and the two legatees who had moved to vacate the order confirming the Slaney lease, with three other legatees, signed a stipulation providing for the settlement of the controversy created by orders Coyne had procured and for the division and distribution of $50,000 of the sum to be received from the Texas Company and for the payment to Scott of his fees by the company. It is in words and figures as follows: "It is hereby stipulated, by and between the undersigned, heirs of the above entitled estate, and the only parties in interest therein, as follows:

"The purpose of this stipulation being to compose and adjust, settle and dispose of the various matters now subject to controversy, and as authority and direction to the Executrix of the above entitled estate, in the administration of the above entitled estate.

"1. That the said Executrix is authorized and directed to accept in full settlement and discharge of the law suits now pending wherein the Estate is plaintiff and the Texas Company is defendant, Superior Court No. 362–898 and 362–899, the sum of $15,000 and dismiss the said actions with prejudice.

"2. That the said Executrix is authorized to cause the lease approved November 7th, 1933, by the above entitled court and in which lease Wm. J. Slaney is named as lessee, to be assigned to the Texas Company, in consideration of the payment of the amount of $35,000.00 to the said above estate.

"3. That the lease now upon the real property of the said estate, held by the Texas Company, is to continue in full force and effect until its termination, subject to such modifications as to future operations as may be agreed to by the heirs and said Texas Company, in agreements executed contemporaneously herewith.

"4. That the royalties heretofore paid into the estate by the said Texas Company, on the wells now producing about 3500 feet, and hereafter to the date of the expiration of the said present existing lease are to be distributed to Lucille Barry as personal property under the last will of said deceased.

"5. That the royalties to come from the future operations and development of said real property, by the Texas Company, both under the existing lease and the new lease known as the Slaney Lease, in payment of oil from the deep zones below 6000 feet, are to be distributed to the heirs, share and share alike.

"6. That the proceeds of the settlement and adjustment of the suit for drainage damages against The Texas Company, Action No. 362–899, to-wit: the sum of $15,000.00 is to be paid over to said Lucille Barry, and distributed to her as her property under the will of said deceased.

"7. That the proceeds of the bonus received from the said Slaney lease, to-wit: the sum of $35,000.00 is to be paid out and distributed as follows: To D. Joseph Coyne, for legal and other services in connection with the securing of said lease and the said bonus, the sum of $10,000.00 and the balance of $25,000.00 is to be distributed, share and share alike to the undersigned heirs.

"8. That the said Executrix is authorized and empowered to have paid out and distributed the said sums covered by the aforesaid paragraphs 6 and 7 to the said parties respectively, without the necessity of applying to the Court for an order of distribution thereof, *but however, subject to reporting the same in the next account and report filed in said estate proceedings.*

"9. Consent is hereby given that Joseph Scott, attorney for certain heirs of said estate, may charge and receive from the Texas Company, such compensation as he may, for his services to the said estate, and as a charge upon the said Texas Company in the adjustment of the matters of controversy with said Texas Company.

"10. That certain suit filed by Irene McClung against Lucille Barry, No. 119–908, is to be dismissed with prejudice.

"11. That certain proceedings filed in the above estate, to remove the Executrix of said estate, to be dismissed with

prejudice. That certain proceeding in said estate, Motion under Section 128 C. C. P. to be dismissed with prejudice.

"That certain proceeding in said Estate, Motion for relief under Section 473 C. C. P. to be dismissed with prejudice.

"12. That the said Executrix is empowered and authorized to make such stipulations and or agreements, as may be required or deemed necessary to close the said above mentioned matters with The Texas Company, to carry into immediate effect the purpose and intent of the adjustment and settlements hereby approved. This stipulation need not be filed.

"February 10, 1934.

"(Signed) MRS. IRENE MCCLUNG
"MRS. MILDRED BARRY BARROW
"LUCILLE BARRY
"MARY M. BARRY
"MARGARET BARRY RICHARDSON
"LIBBIE BARRY RAWSON."

Attached to the stipulation was a memorandum signed by the two attorneys which provided for the division of $60,000. It is in words and figures as follows:

"Re: Barry Estate                    February 10, 1934.

"Memorandum of understanding as to distribution of money received from the Texas Company.

"$60,000 to be paid as follows: $45,000 as bonus for the lease and $15,000 in settlement of the drainage suits, which amounts are to be distributed as follows: $15,000 received from drainage suits to be paid to Lucille Barry. The remaining $45,000 is to be distributed as follows: $10,000 to D. Joseph Coyne as attorney's fees; $10,000 to Joseph Scott, as attorney's fees; $25,000 to be divided one-sixth to each of the devisees named in the will.

"(Signed) D. JOSEPH COYNE
"JOSEPH SCOTT."

The money was received by Coyne from the Texas Company and by him promptly disbursed as provided in the stipulation. At that time none of the infants who later established their rights as heirs of decedent had appeared in the proceeding.

It must be remembered that the above "stipulation" provides that the "executrix" is authorized and directed to accept in full settlement and discharge of the law suits now

pending $15,000; that the "executrix" is authorized to pay Lucille Barry $15,000 and to pay Coyne $10,000. The usurpation of the court's jurisdiction was emphasized by paragraph 8 which provides that the executrix might distribute the sums to the parties without the necessity of applying to the court for an order for distribution.

On February 13, 1934, the stipulation was discussed informally in chambers with the judge of the probate court who suggested the inclusion of the italicized clause in paragraph 8. But the document was not presented in open court as the subject of any petition for an order. Following the execution of the stipulation and the informal conference thereon with the probate judge, Attorney Scott dismissed his motion to set aside the order authorizing the Slaney lease. The stipulation was never made a part of the files in the proceeding until the following September 26th when it was attached to the second account and report of the executrix which was filed by Coyne. The original of the stipulation was not filed until it was received in evidence as contestants' Exhibit No. 1 at the trial of the objections to the second and third accounts of the executrix, following which the judgment appealed from was rendered. One other fact is necessary to a complete picture of the background of the judgment.

On the 17th of August, 1934, six months after the stipulation had been executed, seven minor grandchildren of the decedent filed a contest of the will. Thereafter, on September 26, 1934, the "second report and account" was presented showing the payment by Coyne to himself of $10,000 for his extraordinary services. That account was not heard by the court and no order was made with reference to it until the third account had been filed. Both accounts and objections thereto were heard on December 15, 1939. Before the final hearing of the two accounts, the legatees had, on May 25, 1939, stipulated for the judgment revoking the probate of the will in so far as it affected the grandchildren and for certain benefits to be derived by the minor heirs. By the terms of that settlement Lucille should resign as executrix and all of the heirs ratified the second account with the exception of the items for "attorney's fees obtained without an order or approval of the court". Also, the legatees assigned to the infant heirs all rights to any money held by Coyne as attorney fees that might be disallowed by the court.

The third account was filed by Marcus L. Roberts who succeeded Coyne as attorney for the executrix. It prayed for a determination of the amount due Coyne as attorney fees. At the same time, pursuant to the agreement of May 25th, the executrix resigned and Roberts was appointed as administrator with will annexed. Following the hearing, on the 19th of December, 1939, the court settled and approved the third account. Likewise the second account was approved with the exception of the moneys which had been retained by Attorney Coyne. Thereafter the court made and filed findings of fact and conclusions of law and rendered a judgment as indicated in the first paragraph hereof with this addition, that in the event Coyne fail or refuse so to reimburse the estate the sum of $15,000, then Coyne shall not be entitled to any fees whatsoever for his extraordinary services and in that event he should pay to the estate the full sum of $17,500.

■ That the probate court must fix the fees for extraordinary services of an attorney rendered to an estate, there can be no doubt. Section 911 of the Probate Code provides that any attorney who has rendered services to the estate, upon notice to the personal representative and to the persons interested in the estate, may apply to the court for an allowance upon his fees ''and on the hearing the court shall make an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time, as the court shall deem proper, and such payment shall be made forthwith''. The purpose and effect of the quoted section was to make the attorney a ''party interested in the estate'' for the purpose of enabling him directly to enforce his claim for legal services. (*Estate of Hite,* 155 Cal. 448 [101 Pac. 448].) Prior to the enactment of that section in 1905, the attorney was not an interested party. (11B Cal. Jur., sec. 1065.) However, now any person ''interested in an estate'' may apply directly to the probate court for an allowance of the moneys due him for services rendered; he is a party to the probate proceedings. (*Estate of McDougald,* 143 Cal. 476, 479 [77 Pac. 443]; *Eastwood* v. *Stewart,* 64 Cal. App. 614, 617 [222 Pac. 369].) Jurisdiction to pass upon the demands of any person who has rendered such services is vested exclusively in the superior court sitting in probate. (*Eastwood* v. *Stewart, supra.*) ■ The estate of a deceased person is in the cus-

tody and control of the probate court and it is within its exclusive province to determine the validity and the amount of all claims that are made against the estate to the end that parties interested may be heard upon the propriety of such expenditures. (*Gurnee* v. *Maloney,* 38 Cal. 85 [99 Am. Dec. 352].) So exclusive is this jurisdiction of the probate court that rival claimants for the same commission must be determined in probate and not by a law court. (*Estate of Hughes,* 3 Cal. App. (2d) 551 [40 Pac. (2d) 295].) ■ Inasmuch as the probate court derives its powers from the Constitution, it has the same power as a law court and may hear and determine all questions of law and fact, and such determination is ancillary to proper judgment. (*Estate of Dobbins,* 36 Cal. App. (2d) 536, 539 [97 Pac. (2d) 1051] ; *Estate of Clary,* 203 Cal. 335 [264 Pac. 242].) ■ Where an officer of the court without authority withholds personal property of the estate the probate court may require him to restore the property to the estate (*Bauer* v. *Bauer,* 201 Cal. 267 [256 Pac. 820]), and if he be deceased his estate is not permitted to retain any part of the funds withheld. (*Estate of Fafitz,* 51 Cal. App. 325 [196 Pac. 790].)

In support of the power of the probate court to enforce its jurisdiction over persons interested in the estate, that court may require any person who has been entrusted with any part of an estate to render a full accounting of the money or property which has come into his possession (Prob. Code, sec. 615) and if he refuse to do so, he may be summarily dealt with and committed to the county jail until he submits to the order of the court. (Prob. Code, sec. 614.) The last-mentioned code sections were applied in the *Estate of Troy,* 92 Cal. App. 352 [268 Pac. 426], where the attorneys withheld moneys received from the sale of estate property. Such an order may be made even though the court may have erroneously authorized the payment of the money to the party unlawfully withholding it. (*Heydenfeldt* v. *Superior Court,* 117 Cal. 348 [49 Pac. 210].) Such a party so holding property is not a third party claiming title adversely to the estate so as to entitle him to litigate his rights before a law court. (*Ibid.*) ■ The probate court is the guardian of the estates of deceased persons and has control of the person appointed by it to administer the estate, subject to review. (*Estate of Clary, supra.*)

The suggestion that the probate court was bound by the contract made by Coyne with Lucille Barry is disposed of by the foregoing. Coyne was not a stranger to the estate. He instituted the proceedings as attorney for the executrix. He served in that capacity until his resignation at the time of the trial of the contest over his right to withhold the moneys claimed by him. Appellant contends that Coyne had the right to retain the money paid to him as fees by Lucille Barry individually out of proceeds received in settlement of the two suits brought by her to recover damages to the leasehold which had been distributed by proper order of the court. While she was entitled to have distributed to her the personal property of decedent immediately following the probate of the will, it is not true that the lease, which Coyne caused the court to distribute to Lucille, was personal property. The first account and petition for partial distribution prepared by Coyne discloses that the Taylor lease gave the lessee the right to enter upon the property to prospect, sink wells, and remove oil, gas and other hydro-carbon substances for a period of twenty years *and so long thereafter as said substances are produced in paying quantities, etc.* By virtue of those terms the Taylor lease was realty and should not have been distributed as personal property to Lucille Barry. (*Dagney* v. *Edwards,* 5 Cal. (2d) 1, at p. 11 [53 Pac. (2d) 962, 103 A. L. R. 822].) But inasmuch as the order by which this lease was distributed to her was never appealed from, it became final so far as Lucille Barry was concerned and ultimately by compromise it was approved by all legatees and heirs. Because of the finality of this order distributing the Taylor lease to Lucille Barry, appellant contends that the transactions with reference to that lease were not within the cognizance of the probate court, and that the $15,000 disbursed as damages for drainage was the property of Lucille Barry individually. Conceding the finality of that order, it will be remembered that $7,500 of the money paid in settlement of the drainage suits was never paid to her. When Coyne received the check from the Texas Company, he retained two sums: (1) $7,500 he claimed to be due him from Lucille Barry for his services in the drainage suits, and (2) $10,000 claimed to be due from the estate. We proceed with our consideration of the first item.

The drainage suits were brought in the name of the executrix as well as in the name of Lucille Barry individually. Thereby the attorney as well as the executrix acknowledged the interest of the estate in the outcome of those actions. Also Miss Barry joined in the stipulation that the "executrix" accept $15,000 in settlement of the two actions. Furthermore, Mr. Coyne himself was the author of that stipulation. Inasmuch as one-half, or $7,500 of the recovery was found to be in his possession at the time of the hearing of Coyne's objections to the accounts of the executrix, he was amenable to the orders of the probate court with reference to the moneys he withheld.

But other cogent reasons appear why Coyne was not entitled to retain the $7,500. Not only did he have no order confirming his contract of employment but he bargained with a client whose confidence he then enjoyed, and she was the executrix. The contract of employment between an attorney and his client, where an advantage is obtained, is presumptively invalid. (*Magee* v. *Brenneman,* 188 Cal. 562, 571 [206 Pac. 37] ; *Brydonjack* v. *Rieck,* 5 Cal. App. (2d) 219 [42 Pac. (2d) 336].) Undue influence is presumed and the burden is immediately cast upon the attorney to prove that his transaction with his client was fair. Coyne did not make such proof. Neither did he show that the charges which he made were reasonable. He neither made proof that the transaction between himself and the executrix was fair and equitable and that no advantage was taken by him, but also he failed to establish that his client was fully informed of all matters relative to the transaction or that she fully comprehended her rights or her duties to the estate so that she could act understandingly and deal with the attorney at arm's length. (*Brydonjack* v. *Rieck, supra; Estate of Witt,* 198 Cal. 407 [245 Pac. 197] ; *Moore* v. *Hoar,* 27 Cal. App. (2d) 269 [81 Pac. (2d) 226].) So failing, he had no enforcible rights as against Lucille Barry and none as against the estate on account of the drainage suits. The probate court had not authorized his employment on a fifty-fifty basis or directed the payment of $7,500 to him.

The second item withheld by Coyne was $10,000 which he claimed for extraordinary services in negotiating the Slaney lease. He had already prepared or approved a lease to Slaney and had caused the court to confirm it three

months before Scott appeared upon the scene in opposition thereto. For those services he had not suggested the charge of any fee but he had proposed that an over-riding royalty of 1/42d of the recovery be paid to him by the Texas Company as part of the consideration for the transfer of the Slaney lease. When Scott presented his motion to vacate the order confirming that lease, he advised the court then of a substantial offer by the Texas Company for a renewal of its lease. With that much for a beginning, with the judge objecting to $30,000 as an insufficient sum for a settlement of the drainage suits, and with Scott's friendly contract with the Texas Company already established, it is not readily conceivable that Coyne added a considerable force in inducing the increase of the offer to $60,000. That is to say, the evidence justified the court's appraisal of the value of all of the extraordinary service rendered by Coyne.

But, however valuable his services might have been, he was in no position to withhold $10,000 or any money of the estate for fees without a court order so to do. (Prob. Code, sec. 911.) The stipulation which, appellant claims, authorized his retention of the money shows definitely in paragraphs 1, 2, 7, 8 and 10 that Coyne knew the Slaney lease was an asset of the estate. Of course, moneys received for it belonged to the estate distributable only upon order of the court. Instead of seeking an order authorizing payment of fees and the distribution of the $35,000, the action of the court was obviated by Coyne's having the executrix of the estate join in a stipulation with her co-legatees to pay him $10,000 and to divide the remaining $25,000 among the legatees. Such a stipulation was contrary to the cited section and at variance with a long established practice. The facts disclosed by the record from the time of effecting the distribution of the estate in the Taylor lease to the close of the trial of his objections to the second and third accounts are sufficient to warrant the court in finding that Coyne did not pay the $50,000 to the executrix but that $17,500 thereof was appropriated to himself out of those funds without the approval of the court.

The $60,000 delivered to Coyne by the Texas Company was never a trust fund which any person had the right to distribute. Its distribution was subject only to the order of the court. Adult heirs are at liberty to stipulate con-

cerning their common rights and obligations arising from an estate. But the probate court is the guardian of the estate of a deceased person and without its order moneys of the estate may not be paid upon any agreement (11B Cal. Jur. 589, sec. 1131; *Estate of Moore,* 121 Cal. 635, 639 [54 Pac. 148]).

The disbursement of the $60,000 preceded the filing of their contest of the will by the seven infant heirs. It is unnecessary to follow the vicissitudes of that action. As already noted, a judgment was finally entered revoking the probate of decedent's will in so far as it affected rights of the pretermitted grandchildren. So far as those infant heirs were concerned, that judgment nullified the distribution of the estate in the Taylor lease and of the $15,000 to Lucille Barry; the employment of Coyne to institute the drainage actions; the stipulation among the adult heirs to pay Coyne $10,000; the division of the $25,000 among the legatees and the withholding of the $17,500 by Coyne. The nullification of these steps in the proceedings left the way open for the infant heirs to recover their shares of the assets of the estate from its distributees. (*Thompson* v. *Samson,* 64 Cal. 330 [30 Pac. 980]; *Brydonjack* v. *Rieck, supra; Moore* v. *Hoar, supra.*) Likewise, as assignees thereof, they may successfully claim the interests of the legatees as well as their own in those moneys withheld by Coyne under the denomination of attorney's fees.

Despite the foregoing observations and the authorities cited, appellant urges the proposition that the probate court was without jurisdiction to order Coyne to repay to the estate the moneys he had taken from its coffers. In support thereof they cite a number of authorities: *Jackson* v. *Superior Court,* 210 Cal. 59 [290 Pac. 448, 70 A. L. R. 475]; *Tomsky* v. *Superior Court,* 131 Cal. 620 [63 Pac. 1020]; *Estate of Haas,* 97 Cal. 232 [31 Pac. 893, 32 Pac. 327]; *Estate of King,* 199 Cal. 113 [248 Pac. 519]; *McCarthy* v. *McCarthy,* 205 Cal. 184 [270 Pac. 211]; *McPike* v. *Superior Court,* 220 Cal. 254 [30 Pac. (2d) 17]; *Estate of Inghilleri,* 27 Cal. App. (2d) 664 [81 Pac. (2d) 568]. But all of these cases are readily distinguishable in this: that in each of them the party who finally prevailed was a stranger to the estate and was entitled to a trial before a law court. As to Coyne and the legatees, all of them were "interested parties" and as such they were amenable to the orders of the probate court

as recipients of the estate without judicial authorization.

Not only does the probate court have the power to determine the distribution of an estate and to control the conduct of interested parties with reference to their receipts of distributable shares and other payments made by the estate, but it is an inherent power of the court to entertain and exercise summary proceedings in its discretion against attorneys who are guilty of misconduct in handling the assets of the estate. (*Brunings* v. *Townsend,* 139 Cal. 137 [72 Pac. 919] ; 6 Cor. Jur. 711–713.)   Whether the court will exercise its summary powers is a matter within its discretion.   (*Ibid.*)   Upon this point appellant cites two authorities, *Ex parte Casey,* 71 Cal. 269 [12 Pac. 118] ; *Tomsky* v. *Superior Court, supra* [131 Cal. 620 (63 Pac. 1020)].   In the Casey case, the claimant was a total stranger to the estate, necessitating action before a law court.   In the Tomsky case the executrix for an estate paid her attorney certain moneys advanced as cost and retainer fees.   There was no professional misconduct on the part of the attorney.   Without a trial, the lower court could not find him guilty of neglect of duty and order him to refund the money.   What he had received was not paid to him as a trust fund or by order of the court for a certain purpose.   It had not been embezzled or fraudulently taken.

But it could not be contended that Coyne was the victim of a summary proceeding.   Far from it ; he created the issues of his own pleading and he submitted his person to the jurisdiction of the court by appearing, pleading, giving his testimony in full and by demanding judgment in his favor.   He was thereby given his day in court and had the privilege of presenting all evidence available to him to establish the affirmative of his contentions.   At the trial all of the facts surrounding his services and the moneys deducted by him from the funds of the estate were fully developed.   He thus nominated the probate court to determine the validity and merit of his objections to the accounts.   That court having ruled upon them, appellant is in no position now to question the jurisdiction of the probate court to adjudicate the issue. (*Estate of Marre,* 127 Cal. 128, 132 [59 Pac. 385].)

The final contention is that the court was without authority to make findings with reference to matters not mentioned in the objections to the account.   Unquestionably this

may be done, when such matters are integrally related to the value of the services recited as the basis of the fees claimed. Had he filed no objections at all to the accounts which charged him with the moneys in dispute, it was the duty of the probate judge carefully to examine the account presented and to reject all unjust or illegal claims whether or not any exceptions thereto were filed. (*Guardianship of Vucinich*, 3 Cal. (2d) 235 [44 Pac. (2d) 567]; *Bauer* v. *Bauer, supra.*) The judgment and orders are affirmed.

Wood, J., and McComb, J., concurred.

A petition for a rehearing was denied April 18, 1941, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1941.