[Civ. No. 15895.   Second Dist., Div. One.   July 30, 1947.]

Estate of RAE S. MERRILL, Deceased. JOHN J. McMAHON, Appellant, v. HELEN HILLIN, as Executrix, etc., et al., Respondents.

John J. McMahon in pro. per., and Philbrick McCoy for Appellant.

Arthur E. Schifferman and C. E. Spencer for Respondents.

DORAN, J.—The record herein discloses that Fred B. Merrill, brother of the decedent Rae S. Merrill, was appointed special administrator of said decedent's estate, on ex parte proceedings before Judge William R. McKay, on April 17, 1944. The petition for such appointment, prepared by appellant attorney John J. McMahon, was signed and verified by Fred B. Merrill, and contained the usual statement "That due search and inquiry have been made to ascertain if said deceased left any Will and Testament, but none has been found, and according to the best knowledge, information and belief of your petitioner said deceased died intestate." However, notwithstanding this sworn statement, it appears from appellant's brief that "Fred B. Merrill stated to appellant and to Mr. Verge (the Merrill family attorney) that he had had a previous talk with one Harry B. Ellison, an attorney, concerning the death of Rae S. Merrill at Tucson, Arizona, and in this conversation Mr. Ellison mentioned that he had a copy of a will in his office and knew nothing about the original and did not know if there was an actual will. Fred B. Merrill said that he asked Mr. Ellison if a daughter was mentioned in the copy of the will and Mr. Ellison replied that she was not mentioned in the copy of the will. Mr. Verge then replied that the decedent, Rae S. Merrill, was an inebriate, an alcoholic, and was confined in jail at odd times off and on for years past and was an habitual drunkard, and that if any will should be found that he had no capacity to make a will and was wholly incompetent and that Fred B. Merrill should be appointed as special administrator of the estate of the decedent."

The deceased was the owner of a one-fourth interest in a bungalow court located at Glendale, California; Helen Hillin, a sister, William Jack Merrill, a brother, and Fred B. Merrill, a brother, each owning a like one-fourth interest therein. Prior to the death of Rae S. Merrill, the said Fred B. Merrill had filed a partition action in reference to this property. It appears that from the proceeds of the partition sale, the special administrator, Fred B. Merrill, received the bulk of all that came into the estate, a small part being rents received from the property, and the total receipts being $7,199.90.

On or about March 7, 1945, and after a contest, the will of Rae S. Merrill, deceased, was duly admitted to probate, Helen Hillin being appointed executrix thereof. As indicated in the conversation between Fred B. Merrill and Attorney Ellison previously referred to herein, this will did not mention decedent's daughter, Evelyn M. Aumick, and according to the briefs of all parties hereto, this pretermitted heir is entitled to the decedent's property. Thereafter and on October 16, 1945, Judge Thurmond Clarke rendered judgment that "the Letters of Special Administration heretofore issued to Fred B. Merrill on April 17, 1944 be, and the same are revoked and declared null and void as of and from the date of issuance thereof, . . . and that all powers of the said Fred B. Merrill to act herein are hereby revoked and annulled." This judgment also ordered Merrill to "file his verified final accounting" within 10 days.

It further appears that just previous to the hearing of the will contest and on December 19, 1944, the special administrator had filed a "First Current Account" which discloses that, without order of court, Merrill had paid to the appellant attorney, John J. McMahon, the sum of $1,750 as attorney fees out of total receipts reported as $6,908. On July 17, 1945, the special administrator filed a "Second Current Account," showing in the recapitulation, total disbursements of $5,174.90, and a balance on hand of $1,786.70. This second account states "Amount due to John J. McMahon (appellant attorney) $600"; and seeks credit for the special administrator's "extraordinary services."

Following the judgment revoking Merrill's letters of special administration, there was filed on October 31, 1945, a "Final Account and Report of Special Administration," which had been prepared by Attorney McMahon but was not signed by Merrill, and not verified. The three accounts

came on for hearing before Judge Clarke on November 14, 1945, joint and several exceptions and objections to these accounts having been made by Helen Hillin, the executrix, and Evelyn M. Aumick, decedent's pretermitted daughter. These parties therein entered objection to the various items of said accounts relating to payments of and credits for attorney fees, special administrator's fees, expenses, etc., on the grounds that such items were excessive and unreasonable in amount, unauthorized, and the alleged services of no value to the estate. It appears that the special administrator in whose behalf the final account was filed, also objected to an item in respect to certain expenses claimed to have been advanced by the attorney.

The trial court found that Special Administrator Merrill had received $7,199.90 in money belonging to the estate; that Merrill had expended $4,191.90 "without any order of court and to persons and for purposes for which he is entitled to no credit; that said executrix (Helen Hillin) is entitled to possession of said sum"; that neither Merrill nor Attorney McMahon was entitled to any fees, ordinary or extraordinary, that the only sum Merrill was entitled to was $33.10 expended for filing fees, bond premiums, etc. The court further found that the special administrator, without order of court, had paid to John J. McMahon, "at the instance and request of said McMahon," the sum of $3,640.90 and a further sum of $150 paid at McMahon's request to another attorney; that "no service of the said McMahon has resulted in any benefit to the estate," and that McMahon "was instrumental in procuring the appointment of said Merrill as special administrator and participated in and procured said appointment by failure to disclose all facts known to him to the judge making the appointment." Many of the claims, the court found, were for services "not in connection with this estate," and for services rendered to an individual claimant. Judgment was accordingly rendered in favor of the executrix, and ordering Attorney McMahon to restore to the estate the $3,790.90 with interest. The present appeal by the attorney only is from this judgment.

Shortly after rendition of the judgment, according to appellant's brief, "the special administrator took up negotiations with Arthur E. Schifferman without the consent of the appellant and withdrew his (Merrill's) appeals . . . and

satisfied the judgment without the knowledge or consent of this appellant.'' In this connection it may well be noted that appellant's briefs do not suggest that any part of the attorney fees received were returned by the recipient attorney although the judgment in question ordering such return has now been satisfied by the special administrator.

On mandamus proceedings to compel the superior court to settle and certify transcripts on the attorney's appeal, the Supreme Court in 29 Cal.2d 520, 523 [175 P.2d 819], held that ''under authority of section 911 of the Probate Code, 'an attorney may proceed independently, and maintain an action or an appeal' for fees''; that notwithstanding the satisfaction of judgment by the special administrator, McMahon ''has the right to have (this matter) reviewed·on the merits,'' since the ''money decree does not mark the limits of McMahon's concern herein,'' and the findings of fraud ''constituted a direct attack upon his integrity and conduct as an attorney.''

Only a ''partial'' reporter's transcript has been furnished; the briefs filed by the appellant do not strictly comply with the rules and are, in the main, unsatisfactory. The respondent executrix, however, desires ''a settlement of the matter on the merits,'' and after the long, acrimonious dispute disclosed by the record, involving many different actions, proceedings, motions and petitions, such a settlement is without doubt highly desirable.

Appellant insists that ''The evidence is utterly insufficient to support the findings as to appellant, John J. McMahon,'' but the briefs filed make little definite reference to the record to substantiate this point. In the instant case, however, there can be no doubt that even the partial record furnished discloses substantial evidence in support of the findings and the judgment rendered thereon. For example, on page 238 of the reporter's transcript, occurs the following cross-examination of the appellant:

''Q. . . . So the picture of that is that you received $3,640.90? A. That is about correct.

''Q. From the special administrator in this case? A. Yes.

''Q. Mr. McMahon, it is also a fact, is it not that at no time did you ever have any order for the payment of any fee to you; is that correct? A. I don't need any court order.

''Mr. Babb (attorney for McMahon): I will stipulate that is correct.''

The appellant then claimed to have received only $2,600; $1,750 on the first account, and $850 on the third account, and that there had been some personal "adjustment" with the special administrator. There was also evidence to the effect that certain items of legal service for which fees were claimed had been rendered not to the estate but for Evelyn Aumick whom appellant represented at one time. In regard to certain other items it was stipulated in court that the alleged service "added no money to the estate," and that "no benefit accrued to the estate." Reference has hereinbefore been made to the fact, admitted in appellant's brief, that at the time McMahon prepared and filed the petition for special administration Merrill had stated to appellant that another attorney, Harry B. Ellison, had a copy of a will made by the deceased. At the probate hearing of this petition the court was not informed of this knowledge, and by way of deposition Judge William R. McKay testified that had there been a disclosure of the facts, "I would not have made such an appointment." The usual rule that where the record discloses substantial evidence to support the findings, an appellate court will not attempt to weigh such evidence, must be applied in this case.

Where no general powers have been conferred, a special administrator "has no powers except to *collect, conserve, and protect the estate of his decedent*. (Prob. Code, §§ 460, 463.) His obligations are to the estate only." (*Dodson* v. *Greuner*, 28 Cal.App.2d 418, 421 [82 P.2d 741].) It must be assumed that the appellant, an attorney at law, was fully aware of such limitation of power on the part of the special administrator. It must likewise be assumed that the appellant was cognizant of the law concerning the appointment of special administrators; also that it is required that attorney fees in such cases "shall be fixed by the court" as specified in section 467 of the Probate Code. This section further provides that "the total fees paid to the attorneys both of the special administrator and executor . . . , must not, together, exceed the sums provided in this code as compensation for the ordinary and extraordinary services of attorneys for executors or administrators."

In respect to the power of the trial court to order appellant to return the fees received, it may be said, in the language of *Estate of DeBarry*, 43 Cal.App.2d 715, 726

[111 P.2d 728], that "Where an officer of the court (such as an attorney) without authority withholds personal property of the estate the probate court may require him to restore the property to the estate." ■ The appellant's contention that "All the acts of the special administrator until he was superseded by the appointment of the executrix were valid under the provisions of Section 525 Probate" is obviously without merit so far as the present problem is concerned. *McCarthy* v. *Mitchell*, 54 Cal.App.2d 173, 176 [128 P.2d 681] cited in support of that proposition is not in point; neither that case, nor section 525 of the Probate Code providing that "All acts of an executor or administrator, as such, before the revocation of his letters . . . are as valid, to all intents and purposes, as if he continued lawfully to execute the duties of his trust," can be so construed as to increase the power of a special administrator or to prevent the court in a case such as the present one, from controlling the acts of the administrator and the attorney.

■ As said in *Estate of DeBarry*, 43 Cal.App.2d 715, 731 [111 P.2d 728]: "Not only does the probate court have the power to determine the distribution of an estate and to control the conduct of interested parties with reference to their receipts of distributable shares and other payments made by the estate, but it is an inherent power of the court to entertain and exercise summary proceedings in its discretion against attorneys who are guilty of misconduct in handling the assets of the estate. (*Brunings* v. *Townsend*, 139 Cal. 137 [72 P. 919]; 6 C.J. 711-713.) Whether the court will exercise its summary powers is a matter within its discretion." The DeBarry case held, moreover, that "however valuable his services might have been, he (the attorney) was in no position to withhold $10,000 or any money of the estate without a court order so to do." While it is true, as urged by the appellant, that the facts in the DeBarry case are not identical with those herein, it is nevertheless true that the fundamental principle involved is the same.

■ Appellant's brief argues that "The respondents are estopped from objecting to the reasonable fees asked"; that Helen Hillin "accepted the benefits of appellant's acts in selling the property and is thereby estopped to question his power to act"; that the pretermitted heir, Evelyn Aumick, had authorized appellant to render the legal services in ques-

tion, and "that she was thoroughly satisfied with the work." This conclusion is based on letters from Mrs. Aumick to "Uncle Fred" Merrill, the special administrator, and also seeks to draw support from a more formal document filed in the case on January 10, 1945, evidently prepared by an attorney, in which Mrs. Aumick states that "she has read over the First Account Current . . . and is familiar with the work done by John J. McMahon, attorney for the undersigned, and approves the services rendered by said John J. McMahon for said Special Administrator, and consents to the payment of said attorney fees." In this connection reliance is placed on the case of *Estate of Lankershim*, 6 Cal.2d 568 [58 P.2d 1282] in which appellants were held estopped to object to certain fees *allowed by the court*. The factual situation in the Lankershim Estate was entirely dissimilar from that in the instant case where the fees under discussion were paid without order of court and without any petition therefor having been made by the appellant attorney. In other words, in the present case the special administrator and the attorney prejudged the matter, set the fees and paid the same without seeking court approval, and having done so, now assert that the court can do nothing about the matter. This cannot be and is not the law, and there is no merit in the claim of estoppel under the facts of this case.

The trial court was possessed of power to make the judgment in question; the record discloses substantial evidence to support findings and judgment; and no prejudicial error is apparent either in reference to the admission of evidence or otherwise.

The judgment is therefore affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied August 18, 1947, and appellant's petition for a hearing by the Supreme Court was denied September 25, 1947. Shenk, J., Carter, J., and Schauer, J., voted for a hearing.