[S. F. No. 18832.   In Bank.   Oct. 6, 1953.]

HELEN HENNINGSEN, Respondent, v. MAYFAIR PACK-
ING COMPANY (a Corporation), Appellant.

James F. Boccardo, Jean M. Blum and Edward J. Niland for Appellant.

O. Vincent Bruno and Frank S. Barrett for Respondent.

EDMONDS, J.—Helen Henningsen, as assignee of J. B. Griffin, sued upon a written guaranty. The appeal from a judgment in her favor challenges her standing to bring this action and the sufficiency of the evidence to support the findings upon which the award of damages was based.

In September, 1946, Griffin, a wholesale broker and distributor of food, was doing business as the J. B. Griffin Company. By an oral agreement, he purchased several carloads of dried fruit from Mayfair Packing Company. The agreement included a guaranty in writing by the corporation against declining prices. The guaranty, signed by W. L. Battaglia as agent for Mayfair, referred to three specific carload lots and stated that ''we guarantee your floor stocks of Mayfair Dried Fruits against decline in our prices.''

Between January 1, 1947, and November 11, 1948, the prices of Mayfair's dried fruit declined. Griffin sold most of his Mayfair fruit during that period, generally at prices below those for which he purchased it. He then employed an attorney to enforce the guaranty and assigned his claim to Helen Henningsen, the attorney's secretary.

The complaint was in three counts. In the first, a breach of the written guaranty was charged; the second pleaded an account stated. The third count was based upon an alleged breach of a contract to give Griffin an exclusive dealership. The corporation's answer denied these allegations and pleaded affirmatively the defenses of fraud, absence of consideration, the statute of limitations, and the assignee's asserted lack of standing to sue.

Upon the trial, a nonsuit was granted as to Battaglia. Judgment was rendered against Mayfair on the first cause of action and in its favor on the second and third counts. Mayfair's motion for a new trial was denied.

The findings of fact state that the guaranty, by custom and usage of the fruit packing industry, was limited to a reasonable period of time after the receipt of the fruit by the buyer, terminating in this case on April 14, 1947. Another finding was that Mayfair's prices on dried fruit declined during the period of the guaranty, reducing the value of Griffin's stocks in the amount of $7,593.11.

Concerning Miss Henningsen's standing to bring the action, the court found that the assignment of Griffin's claim to her was for a valuable consideration and that she was not engaged, directly or indirectly, in the collection business. It was concluded that she was legally entitled to maintain the action and recover judgment.

Mayfair contends that the amount of the damages awarded is without support in the evidence. More specifically, it argues, there is no evidence showing that amount of decline in its prices during the guaranty period.

Griffin's purchases, consisting of dried peaches, prunes, and mixed fruits from the 1946 crop, were delivered to him early in January, 1947. According to his testimony, the market prices were high until the end of January, 1947. In February they declined slightly, and in April made a sharp drop, continuing to decline until October, 1948. Griffin's sales of Mayfair fruit continued throughout that period.

The respondent's theory on the trial was that the guaranty against declining prices extended for the entire period that Griffin's Mayfair fruit remained unsold. All of the several estimates Griffin offered to establish the amount of loss were computed upon prices not shown to have been in effect during the period of guaranty.

The sum adopted by the trial court in fixing damages was one of these estimates. The amount was computed on the basis of Griffin's inventory as of April 14, 1947, but using prices stated in the lists issued by certain competitors of Mayfair in October of that year. Mayfair argues that this computation is erroneous for two reasons: (1) because the guaranty was only against declines in Mayfair's prices and they are not established by prevailing market prices or price lists of competitors; and (2) because prices in October are not an accurate index of prices during the preceding April.

The record shows that, customarily, the major packing companies issue periodic bulletins which indicate generally the prices of their products. Although the packers are not bound to adhere to them, such lists reflect roughly their selling prices. The lists are revised continually, and although some packers do not sell at the prices charged by their competitors, the general practice is to do so. Accordingly, the price list of any packer is a rough approximation of the prevailing market price.

With the exception of two of Mayfair's bulletins, the record includes no price lists in effect during the guaranty period.

However, those bulletins were issued in February, 1947, prior to the initial decline, and show amounts above those paid by Griffin for his purchases. ■ There was no testimony as to the prevailing market prices during the guaranty period, other than the general statement that they declined slightly in February and dropped sharply in April. The evidence presented in support of Griffin's claim was that the prices continued to decline, with great fluctuation, after that time, and it negatives any inference that the October prices in any way reflected those prevailing six months earlier. In short, there is no evidence sufficient to support the finding that, *during the period of the guaranty,* the decline in value of Griffin's Mayfair fruit was the amount of the damages awarded.

Mayfair also takes the position that the record discloses sufficient evidence concerning the decline in prices during the guaranty period to permit this court to direct a modification of the judgment. This evidence concerns the sales made by Mayfair and by Griffin between April 1 and April 14, 1947, based upon invoices of the two companies.

The compilation of Mayfair's sales during that period shows that no loss would have been sustained by Griffin had he then sold his Mayfair fruit. However, at that time, all of Mayfair's sales were of export items, and there is no evidence tending to prove domestic sales at the same prices.

Griffin's invoices during the same period indicate that he would have sustained a loss of $885.48 had he sold all of his fruit at those prices. Mayfair argues that such sales must be supposed to have been at prevailing market prices, which in turn governed Mayfair's prices, and by such reasoning the decline in Mayfair prices during the guaranty period may be calculated. But there is no evidence tending to prove that Griffin's sales were at the prevailing market prices.

■ Concerning Miss Henningsen's standing to bring this action, Mayfair challenges the finding that Griffin's assignment of his claim to her was for value. The only evidence upon this point was the testimony of Griffin, who stated that the assignment was not for value but merely for the purpose of collection. However, such an assignee of a chose in action acquires legal ownership and the right to sue upon it. (*Hammell* v. *Superior Court,* 217 Cal. 5, 8 [17 P.2d 101].)

Mayfair takes the position that the assignee is barred from enforcing the claim by those sections of the Business and Professions Code which require collection agencies to be

licensed. (§§ 6852, 6870.) The corporation asserts that she is within the purview of section 6870 which states that "[n]o person shall . . . seek to make collection or obtain payment of any claim on behalf of another without having first applied for and obtained a license." In reply, it is argued that the provision was intended to apply only to those persons who make a practice or business of collecting claims for others and was not meant to prohibit isolated transactions of the kind shown by this record.

It is unnecessary to decide whether the section applies to single transactions. ▮ By section 6854 of the same code, attorneys at law are excluded from the category of collection agencies. Although it was admitted that Miss Henningsen is not an attorney at law, it was stipulated that she was employed by Griffin's attorney. It may reasonably be inferred that she was the attorney's *alter ego* in enforcing the claim.

In *Dodson* v. *Greuner*, 28 Cal.App.2d 418 [82 P.2d 741], the enforcement of a claim was resisted on the ground that an assistant to the assistant vice-president could not qualify as the credit officer of the bank, who is not a "collection agency." (Bus. & Prof. Code, § 6854.) The court found no evidence in the record showing that he was not such officer, but held that, in any event, the action would not be barred. It would be unreasonable, it was said, to suppose that the Legislature intended all of the credit work of a large institution to be done by one person without the power to delegate portions of it to other employees.

It is a common practice, dictated by procedural conveniences, for an attorney to accept an assignment of a chose in action in the name of an employee. That practice was followed in the present case. When the attorney is enforcing the claim on behalf of his client, the real party in interest, no sound reason appears why the assignment of it may not be taken in an employee's name.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.