[Civ. No. 39914. Second Dist., Div. Five. Nov. 20, 1972.]

Estate of ALBERT HENRY GUIOL, Deceased.
AVELINA CHANDLER, as Administratrix, etc.,
Petitioner and Appellant, v.
FREDERICK L. GUIOL, as Successor Administrator, etc.,
Objector and Respondent.

## COUNSEL

Jones & Wilson and James T. Hudson for Petitioner and Appellant.

Thelen, Marrin, Johnson & Bridges and John G. Flett for Objector and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—This appeal is from an order surcharging Avelina M. Chandler, the removed administratrix of the estate of Albert Henry Guiol, in the total amount of $67,879.63.

The facts necessarily must be set forth at some length since the loss to the estate is claimed to be solely the responsibility of the attorney for the administratrix, attorney William M. De Falla.

Albert Guiol died intestate on May 22, 1963, survived by a sister (Chandler), and three nephews and a niece (children of a predeceased brother). On July 1, 1964, Chandler filed her petition for verified letters of administration, alleging that she was a sister and sole heir at law of the decedent and that the decedent left no spouse, issue, parents, other sisters or brothers, or issue of a deceased sister or brother. Chandler was appointed administratrix on August 5, 1964 and filed her qualifying bond with Aetna Casualty & Surety Co., the surety. On July 21, 1965, the inventory and appraisement was filed showing that the estate, in its entirety,

consisted of unimproved real property appraised at $126,000. On June 8, 1967, Chandler filed a petition for "Order Authorizing Conveyance of Easement," seeking a grant of an easement over a portion of the estate's real property in consideration of $4,420 cash. This was granted on June 30, 1967. On April 23, 1968, Chandler filed a "Return of Sale of Real Property and Petition for Order Confirming Sale." The sale was of the real property held by the estate, and the stated total consideration was $63,000, of which $45,000 was to be paid in cash, and the balance of $18,000 was to be satisfied by an assignment of a note with an unpaid balance of $18,056.13, secured by a second deed of trust on a 12-unit apartment building in Los Angeles. In connection with the proposed sale, the property was reappraised at $70,000. The sale was confirmed on September 18, 1968, and Chandler filed an additional bond of $61,000 with Wilshire Insurance Company, the surety. On November 26, 1969, one of the nephews filed a petition for issuance of citation under Probate Code sections 921 and 922 to compel an accounting, and citation was issued and served for hearing on March 12, 1970. On that date the matter was continued to April 30, 1970, on which date Chandler filed an "Account and Report of Administratrix," pursuant to Probate Code section 921. Objections to this account were filed, together with a petition for removal of the administratrix and for appointment of the nephew as successor administrator. Citation issued on the matters, and hearing was set for June 23, 1970. Subsequently, on October 29, 1970, Chandler was removed, her letters were revoked, and the nephew was appointed successor administrator. On December 22, 1970, Chandler filed a "First and Final Account and Report of Administratrix; Petition for Approval of Accounting; for Fees and for Final Discharge." Attorney De Falla prepared this document from records in his possession.

On January 8, 1971, objections of the successor administrator to the account of the administratrix were filed, and there were several hearings on the matter. At the January 20, 1971 hearing, De Falla testified that the cash on hand of $40,784.92 was on deposit in his clients' trustee account in the Crocker Citizens National Bank. As of that date, Chandler believed that all of the estate funds were in De Falla's clients' trustee account. However, a clerk from that bank testified that De Falla's account was closed on October 9, 1970. On March 23, 1971, the court ordered that De Falla appear in court on March 26, 1971 with the sum of $40,784.92 and also with all records, cancelled checks and documents in his possession pertaining to the estate. On March 23, 1971, De Falla first informed Chandler that he had been suspended by the California

State Bar.[1] On April 16, 1971, the court issued a bench warrant for De Falla for failure to appear before the court as ordered.

On April 27, 1971, an amended first and final account and report of administratrix and petition for approval of accounting and for fees, on the letterhead of Glenn D. Reed (an attorney who had replaced De Falla as Chandler's attorney), were filed. On May 20, 1971, the successor administrator filed his objections to the amended first and final account and report of the administratrix.

On July 20, 1971, the court filed its memorandum of intended decision. On August 26, 1971, an order settling first and final account and amended first and final account of the administratrix was filed. In this court order, Chandler was surcharged as follows:

Unpaid balance of worthless promissory note........$17,487.62

Cash advanced without order to Avelina Chandler or
for her benefit as reflected in amended account....... 12,597.00

Cash to balance account ....................... 28,014.46

SUBTOTAL .............................$58,099.08

Interest on the above sums...................... 9,780.55

TOTAL ..............................$67,879.63

Before stating the facts which substantiate mismanagement of the estate administration by Chandler, it is proper to note that Chandler was 59 years of age at the time of qualifying as administratrix, and 66 years of age at the time of settling her accounting (which is mentioned only because she raises this as a factor to be considered, not because it in fact has any bearing on the issue); during the years 1964-1967, she underwent several surgeries, and at times was quite ill; she had never been employed in any business or occupation other than a housewife; previous to becoming administratrix of the instant estate, she had served as administratrix of the estates of two other relatives, and had served as guardian of the estate of three minors. In the prior estates in which Chandler had served as administratrix, Rosalyn Goodrich Bates had been her attorney,[2] and in

---

[1]Apparently De Falla was suspended for failure to pay his State Bar dues in December 1970; thereafter, however, he was suspended from practicing law for other reasons, and that suspension commenced June 23, 1972.

[2]In the second estate, Bates acted as attorney until Chandler was referred to attorney De Falla.

each estate, Chandler had kept the estate funds in a bank account in her name and the name of the bonding company, or in her name alone as the administratrix, and in the case of the guardianships, funds were maintained in separate accounts in her name as guardian; she rendered detailed accountings from information maintained by her; she rendered like accountings from information furnished by her to her attorney in all of the estates in which she served as administratrix. So far as the Wilshire Insurance Company is concerned, at the time of posting the additional bond (September 1968), no discussion was had with either De Falla or Chandler. Also, in October 1968, that surety wrote De Falla in regard to having Chandler sign the bond application, and on February 3, 1969, after receiving no cooperation from him, Wilshire Insurance filed its request for special notice, then did nothing. Exhibit 8 shows that at that time there was over $19,000 in the account maintained by De Falla. Wilshire Insurance did not contact Chandler at *any* time.

## The Facts Relating to the Loss of Funds in the Instant Estate

As heretofore related, in July 1967, by virtue of the sale of the easement to the Edison Company, $4,420 was received on behalf of the estate. When the check in that amount was received by Chandler, she endorsed it: "For deposit only," and delivered it to attorney De Falla upon his representation that it was his practice to deposit such funds in his "clients' trust account." Chandler trusted De Falla and believed that he and the bonding company would take care of the assets jointly.[3] About a year later, the sale of the real property was consummated, and pursuant to the court order approving that sale, the additional bond was posted. Upon receipt by Chandler of $31,063.13 from the escrow in that sale, she went with De Falla to the bank and there discussed with him the nature of the bank account which should be used for these funds, asking if they were going to be placed in a separate account, and, again, De Falla recommended his "clients' trust account," and the funds were therein[4] deposited. The same procedure was followed for the $1,080.75 paid to the estate for interest on the promissory note received as part payment on the sale of the real property. There is no question but that Chandler knew that by her acquiescence in this manner of deposit De Falla had complete control of the funds and that she had no control whatsoever. The evidence

---

[3]No additional bond was required for this sale.

[4]While reference is made to a "clients' trust account," the evidence establishes that the account was one in the name of De Falla without any additional identification.

also established that Chandler knew in February or March 1970 that the obligor on the promissory note, the owner of the apartment building securing the same, had died, and that the holder of the first deed of trust had foreclosed. She discussed with De Falla protecting the estate's interest by paying the default amount (some $4,000 or $6,000), and he informed her that there were insufficient assets. She made no effort to ascertain the status of De Falla's account. She also discussed with De Falla and with the attorney representing the surety the matter of filing a claim against the estate on the second trust deed and note; De Falla promised to prepare the papers, but he never did.

In addition to the above, it was established that Chandler had received some $12,597 as advances upon her potential distributive share of the estate and that this had been done without court order and had not been reflected in the original account which she verified as her final account.

### Contentions on Appeal

■ Appellant's first contention is: "There is no substantial evidence supporting the Court's finding that the embezzlement of the sum of $28,014.46 by the estate's attorney, William M. De Falla, was caused by the negligence of appellant [Chandler]." In answer to this contention, it is necessary to first recognize the primary duty of the administratrix, which was to "take into [her] possession all the estate of the decedent, real and personal . . . ." (Prob. Code, § 571.)  ■  To assure that this protection is given the creditors and beneficiaries of the estate, there is a legal requirement that the administratrix file a bond to insure the integrity of administration (". . . [the administratrix] shall faithfully execute the duties of the trust according to law"). (Prob. Code, § 541.)  ■  As complete exoneration of her failure to safeguard the estate's assets, Chandler claims reliance upon her attorney. As authority for her contention, she cites *Estate of Barbikas,* 171 Cal.App.2d 452 [341 P.2d 32]. That case is clearly distinguishable. In *Barbikas,* the attorney for one of the two executrices of the estate acted as escrow holder in the sale of a business possessed by the estate. During the course of the sale, the attorney was placed in possession of funds, which he embezzled. It was held that under such circumstances the respondents were not subject to surcharge for mismanagement of the estate. As was clearly observed in that case, the funds which came into the possession of the escrow holder were never received by the executrices. The court held that they acted " 'with that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature.' [Citing authority.][5]

---

[5]To the same effect, see *Estate of Taylor,* 52 Cal. 477.

Probate Code section 920 states substantially the same measure in providing that an executor or administrator 'shall not . . . suffer loss by the decrease or destruction *without his fault,* of any part of the estate.' " (Pp. 457-458.) It is readily understandable that where normal business practices are pursued by the executrices, in the absence of negligence in the selection of the escrow holder there would follow no liability for the default of the escrow holder. This is in full conformity with the general rule of responsibility as discussed in the annotation in 28 A.L.R.3d 1191, at page 1198. In that same annotation (p. 1196), it states: "Perhaps the clearest illustration of negligence on the part of an executor or administrator for which liability will be imposed is the surrender of the entire control of the estate to an attorney or an agent who later causes the estate to suffer a loss." The annotation further states (p. 1197) that "liability for a loss caused to the estate by an agent's or an attorney's acts may be imposed upon an executor or administrator who violates a statute which provides that he should act as a prudent executor or administrator, or which provides that money belonging to the estate must be deposited in a bank account [see Prob. Code, § 585], or which provides that he should render a formal accounting and full disclosure as to the estate assets [Prob. Code, § 922], or which provides that he must collect the assets and debts due the estate [Prob. Code, § 571]. [Fns. omitted.]" In the instant case, the administratrix turned over possession and control of the money belonging to the estate to another person, her attorney. In doing so, she breached the duty of an estate representative. Even though the selection of the attorney was without negligence, the surrender of all of the duties of the administration of the estate without the administratrix' becoming responsible to the distributees for any losses sustained would negate the purpose of bonding the estate representative to assure administrative integrity; were such to become the rule, both the estate representative *and* the attorney would have to be bonded to give adequate safeguard to distributees. The applicable rule is set forth in *Gaver* v. *Early,* 191 Cal. 123, 127 [215 P. 394]:[6] "If a trustee confide the application of a trust fund to the care of another, whether a stranger or his own attorney or solicitor, or even cotrustee, he will be held personally responsible for any loss that may result. Under such circumstances a trustee may employ attorneys or agents, according to the usual course of business, to reduce the estate to possession and protect it, but when once in his hands his personal duty to dispose and manage it begins, and this duty is not to be delegated. [Citations.]" (See also: 144 A.L.R. 875 at p. 884; 28 A.L.R.3d at pp. 1210-1227.) A subsequent California Court of Appeal case, without reference to *Gaver,* arrived at the same result

---

[6]We recognize that *Gaver* involved a guardianship matter rather than an estate administration, but the position of trust is the same in either case.

where the loss of money to an estate was directly traceable to the executor, who over a considerable period of time acquiesced in the retention of funds by his foreign attorney, who thereafter disappeared. There, the court stated: "During the time that this money was in [the attorney's] possession the executor did not seek to have him pay it into the treasury of the Compania,[7] where it rightfully belonged, nor in any manner did it seek its recovery. The trial court concluded, and we think correctly so, that the loss of this money was directly traceable to the executor, who, over a considerable period of time, failed to collect from Lujan [the attorney], and seemingly acquiesced in his retention of this money." (*Estate of Barreiro,* 125 Cal. App. 752, 773 [14 P.2d 786].) Here, the finding of the trial court that the estate's cash was lost through the negligence of the administratrix is supported by the facts and the law. Even though the administratrix may not have been negligent in the selection of her attorney, it cannot be said that she was not negligent when she in effect abdicated all of her duties to the estate by turning the money over to De Falla and failing to protect it by her own control and accounting.[8]

■ A further contention on appeal is that the court erred when it found as a fact that the promissory note for $18,000 (unpaid balance, $17,487.62) was rendered worthless by reason of the negligence of the administratrix, and surcharged her for the unpaid balance. We would agree with this contention were it not for the fact that the very negligence which permitted the loss of all of the estate's funds (absent some $12,597 wrongfully disbursed to or for the benefit of the administratrix) resulted in the estate's inability to have adequate funds to protect itself from the loss through foreclosure by the holder of the first trust deed. ■ While it may be true that no effort by the administratrix was made to prevent this loss because of the advice of the attorney to the effect that there were insufficient funds in the estate, this was not an application of "business advice" upon which the administratrix was entitled to rely and thus avoid liability. It was her duty to have cared for the funds, and her negligence in failing to do so resulted in insufficient available funds. Assuming for the sake of argument that there were in fact only sufficient funds existing to satisfy the default relative to the first trust deed and note, and that it was proper business advice not to so apply them, certainly the adminis-

---

[7]The Compania Commercial was a Mexican company partially owned by decedent which had been totally operated by him and which was subsequently operated by the executor.

[8]The testimony of the administratrix clearly shows she intended this very effect: "Knowing it was under bond and the bonding company and [De Falla] were doing it. I just—I had to get well, Mr. Flett, and the only way I could get well was by just giving these responsibilities to the two, the bonding company and your attorney."

tratrix was thereby put on notice of some misappropriation of estate assets and to no longer be liability-free through relying on the representation of the attorney. The finding of fact that the second note is worthless is supported by the testimony of both the administratrix and attorney De Falla, and the surcharge is proper.

■ The contention of error in the court's denial, *"at this time,"* of the allowance of statutory commissions and fees to the administratrix is without merit. The estate was not at that time in a position to be closed, and an apportionment of statutory commissions for estate services actually performed by the administratrix was not mandatory. We reach the same conclusion as to the contention that the administratrix' distributive share of the estate should be set off against any indebtedness owed by her to the estate. While this may be a proper means to satisfy that indebtedness, until the order for distribution is made there is no certainty as to the amount of that distributive share.

We are not inclined to discuss here the right of the bonding company to remuneration from the administratrix at the time any final order of distribution is made, or the right of the successor administrator and/or the bonding company to seek recovery from the attorney.

The order is affirmed.

Ashby, J., and Cole, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.