[Civ. No. 4180. Fifth Dist. Aug. 14, 1980.]

MARY E. BALDOCK et al., Plaintiffs and Appellants, v. HOWARD C. GREEN, Defendant and Respondent.

COUNSEL

Simonian & Pretzer, Arthur L. Pretzer and Charles G. Simonian for Plaintiffs and Appellants.

Stammer, McKnight, Barnum & Bailey and Frank D. Maul for Defendant and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Appellants seek reversal of a judgment of dismissal entered after the trial court sustained, with leave to amend, respondent Howard C. Green's demurrer to appellants' third amended complaint upon the ground it did not state facts sufficient to constitute a cause of action. Appellants chose to stand on their complaint, and the dismissal followed.

In 1968 Minnie Bagley died testate, survived by her husband, James A. Bagley, a daughter, Frances Karol, and six grandchildren, five of whom are the appellants herein. James A. Bagley was appointed executor of her will, and he employed respondent, Howard C. Green, as his attorney. In due course the probate court approved the final account and decree of distribution, which was filed August 4, 1969, and the executor was discharged. The decree distributed the estate, consisting of cash in the sum of $16,985.57, to "James A. Bagley, widower...a life estate in the entire estate of decedent," with one-half of the remainder interest to decedent's daughter, Frances Karol, and one-half of the remainder interest to the six grandchildren in equal shares.

In 1971 James A. Bagley deposited the money in a savings account. Mr. Bagley named himself as life tenant and only decedent's daughter, Frances Karol, as residuary legatee. Bagley died in 1975, and all the funds on deposit were released to Frances Karol.

In this action five of the six grandchildren seek recovery against respondent, Howard C. Green, the attorney for the executor.[1]

---

[1]The action also named Frances Karol as a defendant but we are not concerned with her in this appeal. Clearly the plaintiffs have a cause of action for conversion against her. (See, e.g., *McCafferty* v. *Gilbank* (1967) 249 Cal.App.2d 569, 576 [57 Cal.Rptr.

In the first cause of action of the third amended complaint it is alleged: "That defendant HOWARD C. GREEN had the duty to use the same ordinary care, skill and diligence, in advising JAMES A. BAGLEY in his capacity as executor and directing him in carrying out his duties as executor so that the intended beneficiaries under the will of MINNIE BAGLEY would, by reason of the judgment of distribution, receive the funds due them, as would any attorney acting in the same capacity in the same community.

"That defendant HOWARD C. GREEN knew or in the exercise of due care should have known that the said JAMES A. BAGLEY was not carrying out his duties as an executor in a proper manner and the said HOWARD C. GREEN negligently failed to advise JAMES A. BAGLEY and negligently failed to direct his actions and negligently failed to ascertain that JAMES A. BAGLEY carried out his duties as personal representative so that the beneficiaries under the will and the judgment would receive the funds due them." and that as a proximate result of Green's negligence the plaintiffs (appellants) suffered the loss of their shares of the inheritance.

The second cause of action alleges that respondent had the duty to properly advise the probate court that the executor had carried out his duties and was entitled to be discharged as executor: "That defendant HOWARD C. GREEN negligently represented to the Probate Court of Fresno County that defendant JAMES A. BAGLEY had carried out his duties as personal represntative [*sic*], had done all acts and signed and delivered all documents necessary to permit him to be discharged as executor;..." It is further alleged in substance that in reliance upon respondent's negligent representations to the probate court and to the executor the probate judge signed the decree of distribution although the executor had not properly carried out his duties and had not delivered the property to the beneficiaries in the manner intended by law. As

---

695].) They also have a cause of action against the estate of the life tenant, James A. Bagley, assuming the requirements of claims statutes and the statute of limitations could be met. While Bagley could probably use the cash, and clearly any income derived from it, for his own benefit during his life, he had no authority to give away the cash and thereby defeat the vested interests of the remaindermen, appellants herein. (*Hardy* v. *Mayhew* (1910) 158 Cal. 95 [110 P. 113]; see also Annot. (1970) 31 A.L.R.3d 6; Annot. (1970) 31 A.L.R.3d 169; Annot. (1978) 83 A.L.R.3d 135 (on rights of a life tenant to use, dispose of and give away property given for life).)

a direct and proximate result of Green's negligence plaintiffs (appellants) suffered the loss of their inheritance.

As can be seen, the complaint as well as the arguments made in the trial court and on this appeal are bottomed upon the proposition that the attorney for the executor had the legal duty to do something that would assure the delivery of the remaindermen's interest to appellants upon the termination of the life estate. Precisely what that action by the attorney would consist of is not alleged and remains substantially unexplained.

Preliminarily we note that appellants, having amended their complaint three times, declined to do so a fourth time. At this point we must presume appellants have stated as strong a case as they are able and if the complaint is objectionable on any ground raised in the demurrer the dismissal should be affirmed. (*Gonzales* v. *State of California* (1977) 68 Cal.App.3d 621, 635 [137 Cal.Rptr. 681]; *Hiemstra* v. *Huston* (1970) 12 Cal.App.3d 1043, 1045 [91 Cal.Rptr. 269].)

In *Ventura County Humane Society* v. *Holloway* (1974) 40 Cal. App.3d 897, 902 [115 Cal.Rptr. 464], the court defines the elements of a cause of action for professional negligence. ■ They are: "(1) [T]he *duty* of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise; (2) *breach of* that *duty*; (3) a *proximate causal connection* between the negligent conduct and the resulting injury; and (4) actual loss or *damage* resulting from the professional negligence [citations]. When these elements coexist, they constitute actionable negligence. On the other hand, absence of, or failure to prove, any of them is fatal to recovery."

Appellants rely upon the principles enunciated in the landmark decisions of *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358] and *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal. Rptr. 821, 364 P.2d 685]. *Biakanja* held that a notary public who prepared a will which was denied probate because the notary negligently failed to have it properly attested was liable to the intended beneficiary for the resulting damage though there was no privity of contract between them. The court delineated certain factors which, as a matter of policy, should be balanced in determining whether a defendant should be held liable to a third person not in privity with him.

In *Lucas* the court held that an attorney for a testator who makes a negligent error in drawing the testator's will pursuant to his contract of employment with the testator, thereby depriving an intended beneficiary of his bequest, can be held liable in damages to the intended beneficiary on the theory that the intended beneficiary is a third party beneficiary of the contract of employment.

Both *Lucas* and *Biakanja* were primarily concerned with the policy factors which justify the extension of liability for negligent conduct beyond those persons who were in privity with the negligent person. However, it is clear that before reaching the issue of how far the liability of a negligent attorney extends it must first be determined that the attorney committed a negligent act; that is, failed to use such skill, prudence and diligence as other members of the profession commonly possess and exercise. (*Lucas* v. *Hamm, supra*, 56 Cal.2d at p. 591; *Ventura County Humane Society* v. *Holloway, supra*, 40 Cal.App.3d at p. 902.) Thus, in *Biakanja* the notary public was negligent as a matter of law. In both *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60] and *Chameleon Engineering Corp.* v. *Air Dynamics, Inc.* (1980) 101 Cal.App.3d 418 [161 Cal.Rptr. 463] the pleadings were sufficient: If the allegations in the complaints were proved the defendants were negligent.

*Lucas* v. *Hamm, supra*, 56 Cal.2d 583, is in point. As we have stated, the court held that theoretically an intended beneficiary of a will could state a cause of action against an attorney who made a negligent mistake in drawing the will. However, the court held that the general demurrer in that case was properly sustained because the facts alleged in the complaint, as a matter of law, did not state a cause of action for negligent acts by the attorney. Thus, the court said: "We conclude that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries.

"However, an attorney is not liable either to his client or to a beneficiary under a will for errors of the kind alleged in the first and second causes of action." (*Id.*, at p. 591.)

By a parity of reasoning we have concluded that an attorney for an executor of an estate is not liable for the type of conduct alleged in the third amended complaint herein because, assuming the allegations

to be true, the attorney has not failed to use such skill, prudence and diligence as other members of the profession commonly possess and exercise under the same circumstances.

Initially it is to be noted that the respondent attorney did not represent the estate, the life tenant or the remaindermen. He represented the executor. (See 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 328, p. 5808.)

The gravamen of appellants' complaint is that respondent had a duty to assure the delivery of the inheritance to the remaindermen as part of his duties as counsel for the executor. They ground their argument upon Probate Code section 1066 which provides: "When the estate has been fully administered, and it is shown by the executor or administrator, by the production of satisfactory vouchers, that he has paid all sums of money due from him, and delivered up, under the order of the court, all the property of the estate to the parties entitled, and performed all the acts lawfully required of him, the court must make a decree discharging him from all liability to be incurred thereafter." Thus they argue that the language requiring the executor to demonstrate to the court that he has ". . .delivered up, under order of the court, all the property of the estate to the parties entitled. . ." required the executor to deliver possession of the remainder interest to the remaindermen. Of course, possession of the remainder interest cannot be delivered until the life estate terminates. Thus, to require this to be done as a duty of an executor would mean that the executor could not be discharged until the life estate terminates, which may be many years after the probate of the estate is otherwise complete. It was stated at argument that the executor should be required to assure delivery to the remaindermen by placing the money in some sort of trust during the life of the life tenant, thereby preventing the life tenant from misusing, wasting or giving away the remaindermen's interests. The suggested method for assuring delivery of the money to the remaindermen would require continuous monitoring by the executor during the entire existence of the life estate. No authority is cited for such a proposition, and we think such a requirement would go well beyond the duties of an executor or his attorney. Moreover, we doubt that the executor or the court would have inherent authority to place the property in trust where no trust is created by the will and there are no facts presented to the probate court which suggest the life tenant would commit waste or give away the funds. (See Rest., Property, §§ 202, 203, 205.)

In our view the executor is entitled to be discharged upon delivery of the estate to the life tenant, and it is the life tenant's obligation under Probate Code section 1065 to "sign and deliver to the remainderman, . . . an inventory of the property, expressing that the same is in his custody for life only, and that, on his decease, it is to be delivered to the remainderman." Thereafter it is the remaindermen's obligation to monitor the use of the property by the life tenant.

Finally, we note that appellants are not deprived of a remedy. They have remedies against the real culprits—the estate of the life tenant and Frances Karol to whom all the money was given. Appellants were deprived of their share of the estate as a result of the actions of those persons and not that of the respondent. No sound policy reason appears why liability should be imposed against the attorney for the executor in this situation.[2]

The judgment is affirmed.

Zenovich, J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied August 29, 1980, and appellants' petition for a hearing by the Supreme Court was denied October 8, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

[2]We do not hold or intimate that an attorney for an executor may never be liable to beneficiaries under a will. If such an attorney was negligent in a manner closely analogous to that alleged in *Lucas* we believe he could be liable to the beneficiaries. Here, however, respondent was not in any way negligent, assuming the facts alleged in the complaint are true.