[Civ. No. 48006. First Dist., Div. One. Apr. 29, 1981.]

Estate of THANOS D. LAGIOS, Deceased.
EVANGELINE LAGIOS, as Administratrix With the Will Annexed, etc., Petitioner and Respondent, v.
GEORGE A. BEZAITIS et al., Objectors and Appellants.

COUNSEL

Petris, Vasil & Bradley, Long & Levit, Ronald E. Mallen, Allan R. Moltzen, Gail J. Saliterman and Betty C. Bullock for Objectors and Appellants.

Raymond H. Levy, Christopher A. Brose and Jeffrey T. Wilber for Petitioner and Respondent.

OPINION

RACANELLI, P. J.—We consider the validity of probate orders surcharging the executor of an estate and his attorneys for losses alleged to have occurred as a result of inordinate delay in processing the collection of estate receivables. We summarize the relevant sequence of events underlying the present litigation.

In March 1972 appellant George Bezaitis was appointed co-executor of the estate of his deceased cousin, Thanos D. Lagios, together with attorney John Hodges.

In September 1972 Hodges (who had resigned shortly after appointment in order to act as attorney for Bezaitis in his representative capacity) associated the law firm of Nevin & Nevin, formerly Harlem, Nevin & Sarrail (Nevin). The Nevin firm initiated proceedings against the guarantor of a delinquent $50,000 promissory note (Ganiats note) resulting in a proposed compromise settlement for the sum of $80,525. The surviving widow, Evangeline Lagios, objected to the proposed compromise which was thereafter disapproved by the probate court with instructions to renew collection proceedings. The court further ordered that the estate inventory and appraisement be amended to reflect the actual value of the Ganiats note in the amount of $12,000, the market value of the assets then owned by the potential judgment debtor.

In October 1973 Ernest Cheonis—who had succeeded the Nevin firm as attorney for Bezaitis—associated the law firm of Naphan, Glassford & Sykes, formerly Naphan & Burge (Naphan), which thereafter undertook collection efforts in behalf of the estate, including 1) the obtaining of a $6,500 default judgment on an assigned guaranty liability (Jones debt), and 2) the initiation of suit on an overdue $1,500 promissory note (Mutual Investment note).

In August 1976 Bezaitis filed a petition for approval of final account and distribution, to which Evangeline interposed formal objections seeking surcharges.

In March 1977, Acting Probate Judge Springer entered an order removing Bezaitis as executor and appointing Evangeline as administratrix of her husband's estate. Her present attorney, Raymond Levy, was thereafter designated to act as attorney for the estate.

In September 1978 Evangline submitted her final account and petition for distribution renewing her request for surcharges against the former executor, Bezaitis, and his previous attorneys. Over vigorous objection, surcharges were thereafter summarily imposed on Bezaitis and his former attorneys for failure to timely liquidate the Ganiats note and Jones judgment and to successfully prosecute collection of the Mutual Investment note.[1] This appeal ensued.[2]

I

*Jurisdiction to Impose Surcharges*

■ It is well established that the jurisdiction of the superior court sitting in probate is special and limited, which includes the power to determine claims against estate assets by persons interested in the estate. (*Estate of Bissinger* (1964) 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506].) But the power to resolve disputes between the estate and a stranger rests solely within the province of the superior court in the exercise of its general jurisdiction. (*Schlyen v. Schlyen*

---

[1]Counsel for respondent has informed the court that the Ganiats claim has since been fully satisfied and is no longer a justiciable issue on appeal. Thus, only the surcharges based upon the Jones judgment ($6,500) and Mutual Investment note ($1,500) remain disputed.

[2]During the pendency of appeal the probate court vacated the surcharges imposed upon the Nevin firm which thereafter dismissed its appeal.

(1954) 43 Cal.2d 361, 372-373 [273 P.2d 897]; *Estate of Boyd* (1963) 212 Cal.App.2d 634, 637-638 [28 Cal.Rptr. 258].) ■ The statutory jurisdiction of the probate court expressly includes the power to impose surcharges upon the executor or administrator for any losses in chargeable accounts. (Prob. Code, § 920[3]; e.g., *Estate of Gerber* (1977) 73 Cal.App.3d 96, 113-115 [140 Cal.Rptr. 577] [failure to pay current taxes resulting in interest charges and loss of discount]; *Estate of Guiol* (1972) 28 Cal.App.3d 818 [105 Cal.Rptr. 35] [negligence in releasing estate funds to attorney who absconded]; see *Estate of Chamberlain* (1941) 44 Cal.App.2d 193, 204-205 [112 P.2d 53] [executor as joint obligor with decedent on a note ordered to reimburse estate for one-half of the debt].)

However, while the estate representative is empowered to employ an attorney to act in behalf of the estate (see §§ 902, 910-911), no similar statutory authority exists to surcharge such attorney for estate losses due to negligence or misconduct for which the duly appointed representative is held exclusively accountable to the estate. (*Highfield* v. *Bozio* (1922) 188 Cal. 727, 729 [207 P. 242]; *Estate of Guiol, supra*, 28 Cal.App.3d 818; cf. *Tomsky* v. *Superior Court* (1901) 131 Cal. 620 [63 P. 1020] [probate court without jurisdiction to impose contempt sanctions on estate attorney for failure to refund excess fees].) Moreover, strong policy considerations require rejection of any claim of surcharge liability based upon a theory of an implied duty owed to the probate court. (Cf., *Baldock* v. *Green* (1980) 109 Cal.App.3d 234 [167 Cal.Rptr. 157].)

In 1905, statutory authority was granted to the probate court to allow compensation from estate assets for services rendered by the attorney in behalf of the estate representative. (Now found in §§ 910-911.) The effect of the enactments was subsequently construed to characterize the attorney as a "party interested in the estate" and thus subject to the jurisdiction of the probate court. (*Estate of De Barry* (1941) 43 Cal.App.2d 715 [111 P.2d 728] [attorney vulnerable to contempt proceedings for failure to refund unauthorized overpayment of fees].) In the case last cited, the court reasoned that as an interested party the attorney was amenable to its order "as recipients of assets of the estate without judicial authorization." (*Id.*, at p. 731.) In contrast, the appellant law firm was neither charged with the improper receipt of estate assets nor ordered to return entrusted funds; rather, the

---

[3]All statutory references are to the Probate Code.

surcharge purported to impose personal liability in an amount equal to losses resulting from the uncollected assets due to the claimed negligence or misconduct of counsel. Thus the rationale of *De Barry*, upon which respondent relies, is clearly inapposite and the court below exceeded its jurisdiction in its capricious attempt to fasten liability upon the Naphan firm for its alleged malpractice.[4]

## II

### Proof of Fault

 Appellants next argue that in any case no personal liability attaches in the absence of evidence of fault in accordance with procedural due process. Since we have concluded that the appellant law firm is immune from the surcharge power of the probate court, we discuss the remaining argument solely in the context of the executor's statutory liability.

Specifically, it is contended that the record is barren of any evidence that the uncollected debts were due to the fault of Bezaitis while acting as executor. (See § 920.) Under governing principles an executor may be held liable for chargeable accounts of the estate which remain uncollectible as a result of the executor's neglect. (See *Estate of Carver* (1898) 123 Cal 102 [55 P. 770]; see also *Estate of Azevedo* (1936) 17 Cal.App.2d 710 [62 P.2d 1058].) Liability is predicated upon a *finding* that the executor failed to faithfully perform the duties of managing the business affairs of the estate "with that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature." (*In re Moore* (1892) 96 Cal. 522, 525 [31 P. 584].) Herein, no *competent* evidence was presented to prove either that the two remaining debts were "uncollectible" or that the claimed losses were due to the omission or misconduct of Bezaitis. A review of the record strongly suggests that the surcharges were principally motivated by the court's perception that inclusion of the specific intangible assets in the inventory upon which executor commissions were computed wrongfully implied collectible receivables. Of course, an executor is required to list such assets in the estate inventory (see § 600),

---

[4]The early case of *Estate of Kruger* (1900) 130 Cal. 621 [63 P. 31] is factually distinguishable. In *Kruger* the attorney's negligence was properly considered by way of *offset* in fixing fees for services rendered. As previously discussed, the order of surcharge *herein* was unmistakably intended to indemnify the estate for losses alleged by reason of Naphan's unproven negligence.

the valuation for estate purposes being committed to the official inheritance tax referee (§ 605, subd. (2)). The unremarkable circumstance that Bezaitis performed that duty hardly demonstrates actionable fault—without more—in failing to liquidate such intangible assets.

We conclude that in the absence of any competent proof that the judgment and note remained uncollectible due to the negligence of Bezaitis, the order of surcharges imposed on the former executor cannot stand.

In view of our determinations, we need not consider the remaining arguments raised on appeal.

Judgment reversed.

Elkington, J., and Newsom, J., concurred.

A petition for a rehearing was denied May 29, 1981.