171 Cal.App.3d 752 (1985)
217 Cal. Rptr. 552
Estate of ALBERT ROYAL LINNICK, Deceased.
BERG, SPIRE, MILLER & FRAADE, Petitioner and Appellant,
v.
DAVID E. AGNEW, as Successor Administrator With the Will Annexed, etc., Objector and Respondent.
Docket No. B006555.
Court of Appeals of California, Second District, Division Seven.
August 27, 1985.
*755 COUNSEL
Jones & Wilson, William F. Flahavan, William John Rea, Jr., and Thomas T. Lui for Petitioner and Appellant.
Paul, Hastings, Janofsky & Walker, George E. Stephens, Jr., Peter K. Rosen and Jeffrey B. Valle for Objector and Respondent.
OPINION
JOHNSON, J.
The appellant appeals from an order of the probate court denying its petition for extraordinary attorney's fees. The central issues on *756 appeal are whether the respondent's petition in the underlying action to determine title to contested property was properly filed pursuant to Probate Code section 615 and whether the petition could have been brought pursuant to Probate Code section 851.5 even though the decedent had no claim to the property at the time of his death. Because we conclude the petition was improperly filed pursuant to Probate Code section 615 and could not have been brought pursuant to Probate Code section 851.5, we reverse the court's decision and order the court to refrain from taking any further action in this matter.

I. STATEMENT OF FACTS AND PROCEEDINGS BELOW
In 1977, the decedent, Albert Linnick, an attorney, entered into a contingent fee contract with Bankers Life Insurance Company (Bankers Life) to represent its interest in the sale of land owned by the company. Under this contract, Linnick's fee was to be based on the sale price received for the property.[1] It was agreed this fee would compensate Linnick for all the work he had performed in connection with this property both prior to and subsequent to the execution of the agreement. However, when Linnick died in 1978, the sale of the land had not yet occurred.[2]
After Linnick's death, the appellant, Berg & Spire, was retained by the executrix of the Linnick Estate (the Estate), Alice Holguin, to act as her attorney in the administration of the Estate. Ms. Holguin also authorized Berg & Spire to complete the work under decedent's contract with Bankers Life.[3] She turned over the case file on the matter.
Berg & Spire agreed to represent Bankers Life and entered into the same contingent fee arrangement with Bankers Life as had previously existed between Bankers Life and Linnick. The law firm was aware of this prior contractual arrangement. The only alteration was an agreement by Berg & Spire to pay Martin Bernstein, a representative of Bankers Life, $60,000 *757 allegedly for legal services rendered by him in relation to the property transaction.
In March 1979, the property was sold. Bankers Life agreed Berg & Spire was entitled to $209,000 in legal fees for services rendered by the law firm with regard to this transaction. Of this amount, $161,975 was paid outright in cash and $47,025 was to be paid at a later time when a note relative to the transaction was paid off. Of the sum received, Berg & Spire paid Bernstein the $60,000 fee agreed upon. The Estate did not receive any of this payment and did not know the law firm had received such payment until approximately February 1980.
On or about August 12, 1980, the Estate filed a civil action against Berg & Spire alleging breach of contract, money had and received, constructive fraud, and accounting. The Estate contended all the funds received by the law firm were assets of the Estate. Berg & Spire denied the Estate had any right to the fees received from Bankers Life and raised several affirmative defenses. Berg & Spire also filed a cross-complaint for indemnity and declaratory relief against Bernstein.
On January 7, 1982, the Estate filed a complaint under Probate Code section 615 requesting a citation be issued to Berg & Spire demanding it render an accounting of the legal fees paid by Bankers Life to the law firm and an order be issued that these fees be paid over to the Estate if the court subsequently found the funds received belonged to the Estate. The Estate also requested Berg & Spire not be permitted to deduct or withhold any amount of the fees on account of alleged attorney's fees owed by the Estate to the law firm for services rendered the Estate. Instead, Berg & Spire should be required to file a petition for extraordinary fees pursuant to Probate Code section 911.
On February 10, 1982, Berg & Spire responded to the petition. The firm's contentions included: (1) the probate court lacked jurisdiction to hear the matter, (2) the contract between Linnick and Bankers Life terminated upon his death, (3) the executrix had no authority to retain another attorney, Berg & Spire, to represent Bankers Life upon Linnick's death, (4) the fees paid Berg & Spire represented payment for services performed solely by Berg & Spire, and (5) even if some of the fees paid represented services performed by Linnick, the Estate was only entitled to the reasonable value of his services, not the entire amount.
On March 12, 1982, an evidentiary hearing was conducted. The probate court heard testimony from Jeffrey Berg, the central attorney for Berg & Spire, and Alice Holguin, the executrix during the events in dispute. After *758 this testimony, the court ruled in favor of the Estate. The court held it had jurisdiction in this matter and was obligated to make certain all proceeds properly belonging to the Estate were recovered. The court also stated Berg & Spire violated its fiduciary duty to the Estate when it represented Bankers Life at the same time it represented the Estate. Such representation created a conflict between the firm's own interest and the interest of the Estate. The court further stated the law firm thus erred by placing itself in this adversarial position with the Estate without a complete and total disclosure to the Estate and without bringing this arrangement to the attention of the court.
On May 27, 1982, the court ordered Berg & Spire to turn over the file that had been maintained by Linnick, pay over to the Estate the sum of $101,000, the amount received from Bankers Life, or post a bond in that amount, and file a petition for extraordinary fees. With respect to the latter two requirements, the court fashioned this order in this manner so the fees received by Berg & Spire would be under the jurisdiction of the court and the court could then determine what amount of the fees, if any, properly belonged to Berg & Spire based on its work for Bankers Life and what amount, if any, properly belonged to the Estate based on the work performed by Linnick before he died.
On January 13, 1983, Berg & Spire filed its petition for extraordinary fees raising the same contentions it had previously raised in briefs and arguments before the court.
The matter was heard on September 30, 1983. At the outset, Berg & Spire informed the court the petition for extraordinary fees although one in form was not one in fact since if this were an actual extraordinary fee petition, they would be seeking compensation for extraordinary work done on behalf of the Estate. However, in this case, the petition was ordered by the probate court as a means to determine the proper allocation of the fees received from Bankers Life. After some further discussion, the parties agreed to proceed by way of filing supplemental declarations rather than having an evidentiary hearing.
On November 1, 1983, the court denied Berg & Spire's extraordinary fee petition.
On November 23, 1983, Berg & Spire filed a notice of appeal from the court's denial of its petition.

*759 II. ALTHOUGH THE ORIGINAL PETITION FILED BY THE ESTATE WAS DESIGNATED A PROBATE CODE SECTION 615 PETITION, THE PETITION IN FACT WAS BROUGHT PURSUANT TO PROBATE CODE SECTION 851.5[4]
(1) "The nature of an action and the issues involved are to be determined, not from the appellation given the pleading, but from the facts alleged and the relief that they support." (Bloniarz v. Roloson (1969) 70 Cal.2d 143, 149 [74 Cal. Rptr. 285, 449 P.2d 221]; accord De Lancie v. Superior Court (1982) 31 Cal.3d 865, 869 [183 Cal. Rptr. 866, 647 P.2d 142]; Shimmon v. Moore (1951) 104 Cal. App.2d 554, 557 [232 P.2d 22].) (2) In the case at bar, the Estate filed a complaint under Probate Code section 615.[5] The Estate requested a citation be issued to Berg & Spire requiring them to give a full accounting of the monies received or to be received under the contingent fee contract between Bankers Life and the law firm. The Estate also requested if the court found these funds in fact belonged to the Estate, the court should order the law firm to pay the funds already received to the Estate and relinquish any claim to future payments. This latter relief sought exceeded the scope of section 615.
It is well-established section 615 is in the nature of a bill of discovery. (Estate of Schechtman (1955) 45 Cal.2d 50, 53 [286 P.2d 345]; Estate of Downing (1980) 106 Cal. App.3d 159, 162 [164 Cal. Rptr. 787].) Jurisdiction to try title is not invoked by this section. (Ibid.) As the Schechtman court stated: "The power of the court in such a proceeding ends with the discovery of the property and the enforcement of the remedial provisions of the statute." (Estate of Schechtman, supra, 45 Cal.2d at p. 53.) Section 615, therefore, does not give the court authority to order a party to surrender title to property which an estate claims it owns.
The Estate does not dispute this principle in general. The Estate argues, however, a probate court can order an attorney who wrongfully withholds funds from an estate to restore those funds to the estate. The Estate cites Estate of De Barry (1941) 43 Cal. App.2d 715 [111 P.2d 728]; McCarthy v. Superior Court (1944) 64 Cal. App.2d 468 [149 P.2d 55]; and Estate of Troy (1928) 92 Cal. App. 352 [268 P. 426] in support of this position. However, as discussed in more detail below, these cases were all decided *760 prior to the adoption of section 851.5 and their rationale was abrogated by its implementation.[6]
Prior to the adoption of section 851.5, it had been the general rule in California that the probate court had no jurisdiction to determine title to property between the representative of the estate and a "stranger to the estate." A stranger to the estate was a person not in privity with the proceedings. The cases cited by the Estate were part of the judicial development of this principle and the exceptions thereto. (See Central Bank v. Superior Court (1955) 45 Cal.2d 10, 16-17 [285 P.2d 906]; Estate of Coffey (1958) 161 Cal. App.2d 259, 266 [326 P.2d 511].) However, when section 851.5 was amended to create jurisdiction over strangers, this general principle, along with its exceptions, was annulled. (Estate of Howard (1976) 58 Cal. App.3d 250, 261 [129 Cal. Rptr. 836]; Richer v. Superior Court, supra, 63 Cal. App.3d at p. 756; Estate of Sayles (1982) 130 Cal. App.3d 275 [181 Cal. Rptr. 543].) (3) Section 851.5 now provides the authority and the procedure for the hearing of a petition by a decedent's estate concerning any claim involving property allegedly wrongfully possessed by another.[7]
(4) (See fn. 8.), (5a) While we view the present action as an attempt by the Estate to invoke the jurisdiction of the probate court pursuant to section 851.5,[8] we reject the Estate's attempt to utilize this provision. As this section *761 provides, in relevant part: "If a person ... dies having a claim to real or personal property, title to or possession of which is held by another, the executor ... may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated." (Italics added.) At the time Linnick died, he did not have a sufficient claim to the contested attorney's fees to entitle his estate to bring the current action.
(6a) It is well settled that when an attorney dies having only partially performed services under a contingent fee contract, his estate is not entitled to recover any fees for the decedent's services unless and until the contract is completed, i.e., the contingency occurs. (Roe v. Sears, Roebuck, & Co. (7th Cir.1943) 132 F.2d 829; City of Barnsdall v. Curnutt (1945) 198 Okla. 3 [174 P.2d 596, 600]; Mulqueen v. Commissioner of Internal Revenue (2nd Cir.1933) 65 F.2d 365, 366, cert. den. (1933) 290 U.S. 644 [78 L.Ed. 559, 54 S.Ct. 62]; Morton v. Forsee (1913) 249 Mo. 409 [155 S.W. 765, 767-769]; Annot. (1970) 33 A.L.R.3d 1375, 1378-1379.)
In Roe v. Sears, Roebuck & Co., supra, 132 F.2d 829, the court was faced with a case in which an attorney had been hired under a contingency fee contract, had performed services under that contract, died before the contract was completed, and the client ultimately recovered that for which the attorneys had been hired, i.e., the contingency was fulfilled. In holding the attorney's estate was entitled to recover for the reasonable value of his services completed prior to his death, the court stated: "We are, however, convinced that the decisions are well nigh unanimous in holding that recovery may be had in contingent fee cases if the client ultimately recovers on its claim and the attorney rendered service in respect thereto, but dies before the client recovered. The theory seems to be that death terminates the contract of employment but the attorney having rendered services of value to his client, his estate may recover the fair value of the services rendered pursuant to the contract. (Footnotes omitted.)" (Italics added.) (Id., at p. 832.)
Prior to the completion of the contract, no enforceable claim arises. In Mulqueen v. Commissioner of Internal Revenue, supra, 65 F.2d 365, the petitioner's husband, an attorney, died with a number of contingent fee cases unfinished. The petitioner entered into an arrangement with another attorney to complete these cases and divide the fees ultimately recovered. *762 The court discussed the nature of the interest possessed by the estate prior to and after the completion of the cases. As the court stated: "As Mr. Mulqueen's fees were contingent under personal contracts with his clients, his estate had no enforceable claim against his clients under contracts not performed when he died. (Cite omitted.) Yet when the cases were successfully completed a lien for compensation in so far as Mulqueen had performed arose in favor of his estate under the law of New York. (Cites omitted.) To this extent, it may be said that Mrs. Mulqueen, as executrix, had an inchoate right to some portion of the ultimate fee in each case, eventually completed, when she entered into the contract with Lamb." (Id., at p. 366.)
There do not appear to be any California cases which have faced a similar factual context as discussed in the cases above and as present in the case at bar. However, a like result has been reached in an analogous context  when an attorney operating under a contingent fee arrangement has been discharged by his client prior to the completion of the case.
In Fracasse v. Brent (1972) 6 Cal.3d 784 [100 Cal. Rptr. 385, 494 P.2d 9], the plaintiff was retained by the defendant to prosecute a personal injury claim. They entered into a contingency fee agreement. Prior to any recovery, the defendant discharged the plaintiff. The plaintiff brought suit for declaratory relief. The plaintiff prayed for a declaration that the contract was valid and he had an interest in any amount ultimately recovered by the defendant due to the contingent fee arrangement. The defendant's subsequent demurrer was sustained. In affirming the trial court's ruling, the Supreme Court held: "... [A]n attorney discharged with or without cause is entitled to recover the reasonable value of his services rendered to the time of discharge.... We further hold [however] that the cause of action to recover compensation for services rendered under a contingent fee contract does not accrue until the occurrence of the stated contingency." (Italics added.) (Id., at p. 792; accord Bandy v. Mt. Diablo Unified Sch. Dist. (1976) 56 Cal. App.3d 230, 233-234 [126 Cal. Rptr. 890]; Kroff v. Larson (1985) 167 Cal. App.3d 857, 860-861 [213 Cal. Rptr. 526].) (7) If the client never achieves a recovery, the discharged attorney will be denied compensation. (Ibid.) (6b) We feel confident based on the reasoning and holding expressed in Fracasse and subsequent cases, a similar rule would apply when an attorney dies having not completed work undertaken pursuant to a contingent fee arrangement.
(5b) While it is true the Estate in the case at bar had an inchoate claim to attorney's fees dependent upon the completion of Linnick's agreement with Banker's Life, we do not believe this is a sufficient claim to enable the Estate to bring an action pursuant to section 851.5.
*763 In Estate of Sayles, supra, the appellant, the beneficiary of a deed of trust used to secure a promissory note, brought an action against the estate pursuant to section 851.5. The trial court denied the appellant's petition stating, in part, the appellant did not possess a sufficient interest in real property to entitle her to bring an action pursuant to this section. The appellate court agreed. In discussing the scope of Probate Code section 851.5, the court stated: "Since its enactment, cases decided under section 851.5 have required an `interest' in real or personal property far more substantial than merely being the beneficiary of a trust deed securing a promissory note.... [¶] The common denominator in all of these authorities consistent with the history behind the enactment of that statute, is that the claimant in each instance sought a declaration of title, ownership, or possession of the property at stake." (Italics added.) (Id., at p. 279.) In similar regard, the claim possessed by the Estate at the time of Linnick's death does not appear to be the type of claim intended to be the basis for an action pursuant to section 851.5 since the Estate had no entitlement to any fees under the contract until the contingency was fulfilled. The contingency was of course not fulfilled until long after Linnick's death. If the contingency had not been fulfilled, no entitlement would have arisen. We are aware of no cases which have extended section 851.5 to encompass such a claim and decline to do so ourselves.[9]
Even if this were the type of claim that could be asserted pursuant to section 851.5, the Estate could still not avail itself of this provision since there was a pending civil action pertaining to the same subject matter at the time the probate action was filed. As section 851.5 provides in relevant part: "If a civil action is pending in respect to the subject matter of a claim filed pursuant to this section and jurisdiction has been obtained in the court where the civil action is pending prior to the filing of such claim the court shall abate the petition until the conclusion of the civil action." (Italics added.) (Accord Heiser v. Superior Court (1979) 88 Cal. App.3d 276, 278 [151 Cal. Rptr. 745].)
In the case at bar, the Estate filed a civil action entitled "Alice Holguin, as Executrix of the Estate of Albert R. Linnick v. Berg, Spire, Sacks & *764 Fraade, etc., et al." Los Angeles Superior Court case No. C 333761 on August 12, 1980. It sought, in essence, the same remedy sought in the later filed probate action. As such, the probate action would have to be abated.
The Estate argues, however, the decision whether to abate is discretionary with the probate court. The Estate relies on Richer v. Superior Court (1976) 63 Cal. App.3d 748 [134 Cal. Rptr. 52] for this position. However we do not believe this case compels us to reach this result.
In Richer, the decedent died in 1973. Soon thereafter, a civil action was filed against the estate by one Donna Dee Cook seeking in part to quiet title to property she resided on. After probate proceedings were initiated by the estate, Cook asserted her right to the property. Her civil action was subsequently abandoned because Cook never obtained jurisdiction over the person of executrix. During the period Cook had been attempting to obtain jurisdiction, the executrix filed a petition pursuant to section 851.5. Cook made a motion to abate, citing the language of section 851.5. This motion was subsequently denied. At the time of its denial, no civil action was pending. Cook later filed a new civil action seeking essentially the same relief as the prior action. Personal service was made on the executrix. Shortly thereafter, Cook filed another motion to abate the section 851.5 action filed by the executrix. This also was denied. Cook then filed a petition for writ of prohibition with the Court of Appeal seeking to abate the proceedings under section 851.5 on the same grounds. The appellate court denied the petition stating the record supports the implied finding of the trial court that the civil action was filed for the purpose of delay. The section 851.5 action proceeded to trial and was assigned to another judge for that purpose. Cook again moved for abatement. This time the motion was granted. The executrix filed a petition for writ of mandate and an alternative writ was issued. It is the court's subsequent decision which the Estate cites as support for its position.
The appellate court indeed held the trial court erred in abating the proceedings. This holding, however, was based on the doctrine of the law of the case. The court held this doctrine compelled the trial court to follow the previous decision of the appellate court in this matter which upheld the earlier trial court's denial of the abatement motion because the civil action was initiated for delay. (Id., at p. 757.) The court did not reexamine the merits of its prior decision upholding the trial court's denial of the motion. As the court stated: "At this point we will not inquire into the merits of our first decision, nor may the trial court inquire into its merits but must regard it as the law of the case." (Ibid.)
Richer is thus distinguishable from the case at bar on several grounds. First, the issue in Richer was essentially whether the trial court was bound *765 by the doctrine of the law of the case, not whether the trial court was required to abate the proceeding. Second, in that case, the civil action was filed after the probate action was initiated and was found to have been brought solely for the purpose of delay. In the case at bar, the civil action was filed before the probate action and was certainly not brought for the purpose of delay since it was the Estate which brought the action. It should also be noted after Richer was decided, the Legislature amended section 851.5 to provide that abatement is required only if jurisdiction is obtained in the civil action prior to the filing of the section 851.5 action. Before the amendment, it was not necessary that jurisdiction was obtained in the civil action prior to the section 851.5 filing. It is arguable the Legislature amended this section to deal with the factual context present in Richer, but not present in the case at bar  the subsequent filing of a civil action as a delaying tactic.
(8a) The Estate also notes Berg & Spire did not appeal or writ the probate court's order requiring the law firm to file an extraordinary fee petition and suggests Berg & Spire should not now be allowed to challenge the court's jurisdiction. We disagree.
It should first be noted Berg & Spire did not have the right to appeal the court's order. Section 1240 sets forth the orders from which appeals may be taken and the section's provisions are exclusive. (9) An appeal cannot be taken pursuant to section 615. (Estate of Downing, supra, 106 Cal. App.3d at pp. 162-163; Estate of Schechtman, supra, 45 Cal.2d at pp. 54-56.) Although as discussed earlier, we ultimately do not treat the petition brought by the Estate as a section 615 petition, we do not believe the Estate can have it both ways, arguing in the one context the petition was brought pursuant to section 615 while in another context arguing it was really brought pursuant to some other authority which would allow for an appeal.[10]
It is true Berg & Spire could have sought review by seeking a writ of prohibition. (10) Such a writ is used to restrain judicial action in excess of jurisdiction where there is no other adequate remedy. (Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 290 [109 P.2d 942, 132 A.L.R. 715]; Estate of Buckley (1982) 132 Cal. App.3d 434, 448 [183 Cal. Rptr. *766 281].)[11] (8b) However, the Estate cites to no authority holding the failure to seek a writ of prohibition precludes a party from subsequently challenging on appeal the court's jurisdiction to issue the prior order.
The Estate also argues Berg & Spire invoked the jurisdiction of the court when it filed the petition for extraordinary fees and may not now challenge the power of the court to rule on its petition because it lost on the merits. The Estate relies on Estate of De Barry, supra, 43 Cal. App.2d 715 in support of this position.
In Estate of De Barry, a case in which an attorney was ordered to restore wrongfully withheld funds to an estate, the attorney petitioned the court on his own initiative, yet subsequently challenged the court's jurisdiction. The court rejected this challenge holding the attorney could not invoke the court's jurisdiction, then upon losing challenge the court's jurisdiction to issue such an award. (Id., at p. 731.) In the case at bar, however, Berg & Spire was compelled by the court to file a petition for extraordinary fees. The court, not Berg & Spire, decided this was the procedure it would use to determine the proper allocation of the fees between the Estate and the law firm. Berg & Spire challenged the court's jurisdiction when the probate proceedings were initiated by the Estate and continued to make this challenge throughout the proceedings. This is not a case, as in Estate of De Barry, of a party initiating an action and thereby explicitly or implicitly accepting the court's jurisdiction to decide the matter but only doing so for as long as the court rules in favor of the moving party.
For the foregoing reasons, the probate court erred in ordering Berg & Spire to turn over the funds received from Banker's Life to the Estate and denying their petition for extraordinary fees.

DISPOSITION
The judgment of the probate court is reversed. The probate court is directed to refrain from taking any further action in this matter which is inconsistent with the views expressed in this opinion.
Lillie, P.J., and Thomas, J.,[*] concurred.
NOTES
[1] Specifically, the agreement provided Linnick would receive 6 percent of the first $1 million received on the sale, 15 percent of the next $500,000, and 20 percent of the next $500,000.
[2] The parties dispute how much work Linnick had performed for Bankers Life pursuant to the contract by the time of his death. The appellant contends Linnick had performed very little work under the contract. The respondent contends, however, Linnick had performed substantially all the work that was required, i.e., an agreement for the sale of land had been reached and all that remained was reducing the agreement to writing.
[3] The parties dispute the nature of this authorization. Berg & Spire contend the executrix authorized it to replace Linnick and thus to personally represent Bankers Life in the sale of the property. In other words, the executrix agreed Berg & Spire would become the attorneys for Bankers Life and as such could receive whatever compensation for their work Bankers Life and the law firm agreed upon. The Estate contends the executrix merely authorized Berg & Spire to complete the contract for the benefit of the estate.
[4] Hereinafter all references are to the Probate Code unless otherwise indicated.
[5] Probate Code section 615 provides in relevant part: "The court or judge, upon the complaint, on oath, of any executor or administrator, may cite any person who has been intrusted with any part of the estate of the decedent to appear before the court or judge and require him to render a full account, on oath, of any moneys, accounts, or other property or papers belonging to the estate, which have come to his possession, and of his proceedings thereon; ...."
[6] Section 851.5 provides in relevant part: "If a person dies in possession of, or holding title to, real or personal property which, or some interest in which, is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another, the executor, administrator, or any claimant may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated...."

Section 852 provides in relevant part: "At the time appointed, the court, upon proof that due notice of the hearing of the petition filed under Section 851 or Section 851.5 has been given, shall proceed to hear the matter; and if the court is satisfied that a conveyance or transfer or other order should be made, it shall make an order authorizing and directing the executor, administrator, or other claimant to execute the same to the party entitled thereto, or granting appropriate relief...."
[7] We reject the Estate's contention section 851.5 only allows an estate to bring an action against strangers to the estate, not parties who under the old scheme would have been considered interested in (in privity with) the estate. The 1972 amendment eliminated this distinction and henceforth allowed actions to be brought regardless of which classification a party was deemed to fall within. We question the discussion in Estate of Lagios (1981) 118 Cal. App.3d 459, 462-463 [173 Cal. Rptr. 506] to the extent it failed to recognize this change.
[8] We also view Berg & Spire's petition for extraordinary fees and the current appeal from the court's ruling on that petition as simply part of the overall section 851.5 proceeding. Although the petition was entitled a petition for extraordinary fees, it was one in name only. A petition for extraordinary fees is filed to recover fees out of the estate for extraordinary services rendered to the estate. (§ 910; Estate of Lagios, supra, 118 Cal. App.3d at p. 463; Estate of Lee (1981) 124 Cal. App.3d 687, 693 [177 Cal. Rptr. 229].) However, the petition in the case at bar was not filed for that purpose. The central dispute in this case concerned fees received by Berg & Spire from Bankers Life. The issue before the court was what amount of these fees, if any, should be apportioned to the Estate due to the work performed by Linnick for Bankers Life prior to his death and what amount of these fees, if any, should be apportioned to Berg & Spire due to work conducted by the law firm for Bankers Life. The purpose of the petition, therefore, was to assist the court in determining whether Berg & Spire possessed property that rightfully belonged to the Estate. The issue before the court, and the reason it ordered Berg & Spire to file a petition for extraordinary fees had nothing to do with any alleged fees owed Berg & Spire by the Estate for services performed for the Estate. The probate court recognized this when it issued its order and Berg & Spire maintained this position in its petition for extraordinary fees and at the arguments on this petition.
[9] Moreover, this interpretation is supported by what little legislative history exists relative to this provision. As the 1972 Regular Session Summary Digest provides in relevant part: "[This bill] [a]uthorizes court having jurisdiction over the administration of estate of decedent to determine title to real or personal property, title or possession of which is held by another, to which the decedent had a disputed claim." (Italics added.) In addition, in his letter asking then Governor Reagan to sign the bill, the author of the bill stated: "Present law permits the Probate Court to resolve these disputes [disputes concerning title to and ownership of property] only where the decedent was in possession of the property in question or held apparent title thereto. This bill expands the jurisdiction of the court so that they may resolve all property disputes in which the decedent had a claim to the property." (Italics added.)
[10] As discussed, we are treating the entire proceedings below as an attempt to instigate proceedings pursuant to section 851.5. An order pursuant to section 851.5 granting or conveying property is appealable. (§ 1240.) However, at the time the court made its order requiring Berg & Spire file an extraordinary fees petition, such a grant or conveyance had not occurred. As the court stated: "The remedy that I have tried to fashion here is to get the money back under the jurisdiction of the court, in the hands of the Estate, and then make a determination as to what, if any, money is due to Mr. Berg and what, if any, money is due to the Estate." (Italics added.)
[11] An inadequate remedy is demonstrated, as in the case at bar, when the challenged act is not a directly appealable order but is only reviewable on a later appeal from the final judgment. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 52, p. 3826.)
[*] Assigned by the Chairperson of the Judicial Council.